**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCINE SHULMAN; IRON
ANGEL, LLC; 3F, INC.,

*Plaintiffs-Appellants,*

v.

TODD KAPLAN; MEDICAL
INVESTOR HOLDINGS LLC, DBA
Vertical Companies; CHARLES
HOUGHTON; MATT KAPLAN;
DREW MILBURN; COURTNEY
DORNE; SMOKE WALLIN;
ROBERT SCOTT KAPLAN, AKA
Robert Scott; ELYSE KAPLAN; JEFF
SILVER; IRON ANGEL II, LLC;
NCAMBA9, INC.; VERTICAL
WELLNESS, INC.,

*Defendants-Appellees.*

No. 20-56265

D.C. No.
2:19-cv-05413-
AB-FFM

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted September 1, 2022
Pasadena, California

Filed January 18, 2023

Before: MILAN D. SMITH, JR. and RYAN D. NELSON, Circuit Judges, and GERSHWIN A. DRAIN,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### RICO / Standing

The panel affirmed the district court's dismissal of claims brought by a cannabis entrepreneur and two cannabis businesses under the Racketeer Influenced and Corrupt Organizations Act, based on alleged harms to their cannabis business and related property through acts of mail and wire fraud by a former business partner and other defendants.

The panel held that while appellants had Article III standing, they lacked statutory standing under RICO.

As to Article III standing, the panel held that appellants satisfied the injury requirement, which requires a showing of an invasion of a legally protected interest, because cannabis-related property interests are recognized under California law. Appellants satisfied the causation requirement because

[*] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

they pleaded that their alleged injuries were caused by appellees' actions. Appellants also satisfied the requirement that their injury would likely be redressed by legal relief. Appellees argued that appellants' alleged injuries were not redressable because they related to a cannabis business, which was illegal under the Controlled Substances Act. The panel held that the fact that appellants sought damages for economic harms related to cannabis was not relevant to whether a court could, theoretically, fashion a remedy to redress their injuries. Appellants sought money damages, and an award of money damages is the quintessential remedy for a civil RICO violation. Therefore, the alleged harm was redressable by a federal court, and appellants had Article III standing.

The panel held that appellants nonetheless lacked statutory standing to bring their claims under RICO Section 1964(c). Statutory standing requires plaintiffs to show (1) that their alleged harm qualifies as injury to their business or property and (2) that their harm was by reason of the RICO violation, which requires a showing of proximate causation. The panel concluded that, for appellants to establish RICO standing, the statute's use of the term "business or property" must encompass businesses and property engaged in the cultivation, sale, and marketing of cannabis—an enterprise that was legal under California law, but was illegal under federal law. Agreeing with other circuits, the panel held that state law does not control where RICO's statutory purpose or congressional intent in enacting the statute conflicts with the relevant state law. The panel concluded that the statutory purpose of RICO and the congressional intent animating its passage conflicted with the California laws recognizing a business and property interest in cannabis. Looking to RICO as a whole, and

considering RICO in tandem with the Controlled Substances Act, which was enacted almost contemporaneously, the panel found it clear that Congress did not intend "business or property" to cover cannabis-related commerce. Accordingly, the panel held that appellants lacked a statutory right to bring a claim under RICO.

## COUNSEL

Kristin C. Cope (argued), O'Melveny & Myers LLP, Dallas, Texas; Cheryl Cauley, Baker Botts LLP, Palo Alto, California; Christopher E. Tutunjian, Baker Botts LLP, Houston, Texas; Christopher Hunt; Baker Botts LLP, Dallas, Texas; for Plaintiffs-Appellants.

John C. Scholz (argued), Lafayette, Colorado; Melissa G. Fulgencio, Uplift Law, Placentia, California; Charles Houghton, Colorado Springs, Colorado; Rachel F. Kashani and Priscilla B. George, Medical Investor Holdings LLC, Agoura Hills, California; Elyse S. Kaplan, Camarillo, California; for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

The question presented in this case is whether Appellants, a cannabis entrepreneur and two cannabis businesses, have standing to bring claims arising pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, based on alleged harms to their cannabis business and related property. We have appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291. We hold that while Appellants have Article III standing, they lack statutory standing under RICO.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Francine Shulman is a cannabis farmer and entrepreneur who operates a business that grows, markets, and sells cannabis in California. Shulman formed an LLC and a corporation through which to operate her cannabis businesses, both of which are also appellants in this action. After California voters passed a ballot proposition permitting the sale of cannabis for recreational use, Shulman sought to expand her operation and engaged Appellee Todd Kaplan as a business partner. Appellants allege that Kaplan and others subsequently engaged in unlawful, fraudulent conduct that injured their cannabis business and related property.

Appellants sued Appellees in federal district court, asserting dozens of claims, two of which arise under RICO. Appellants' RICO claims are based on alleged mail and wire fraud that Appellees allegedly committed in furtherance of their scheme. Appellants also brought two Lanham Act

claims and various state law claims, including fraud and breach of contract.

The district court granted Appellees' motion to dismiss with prejudice, holding that Appellants lacked standing to bring their RICO claims.   The court also dismissed Appellants' Lanham Act claims on standing grounds as well as their state law claims, declining to exercise supplemental jurisdiction.  Appellants now appeal the district court's order only as to their RICO claims.

## II.
## ANALYSIS

### A.

The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case. *See Horne v. Flores*, 557 U.S. 433, 445 (2009).   We review standing determinations de novo.[1]  *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092,

---

[1] It is not apparent from the district court's order whether it dismissed Appellants' RICO claims for a lack of statutory standing or Article III standing.  "'[T]hough lack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).' … The former is a determination on the merits, while the latter is purely jurisdictional."  *Naruto v. Slater*, 888 F.3d 418, 425 n.7 (9th Cir. 2018) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)).  Here, Appellees brought a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6), which the court granted. However, the cases the district court cited in rendering its decision pertain to Article III, rather than statutory, standing.   "[W]e review dismissals pursuant to both Rule 12(b)(1) and Rule 12(b)(6) de novo[.]" *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir.

1098 (9th Cir. 2022). As the party "invoking federal jurisdiction," Appellants have the burden of establishing standing pursuant to Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When assessing a party's standing at the pleading stage, we accept all facts alleged in the complaint as true. *See Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

To establish Article III standing, Appellants must show (1) that they "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "that the injury was likely caused by the defendants;" and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

An injury in fact is "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. This legal right may be "one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." *Tenn. Elec. Power Co. v. Tenn. Val. Auth.*, 306 U.S. 118, 137 (1939), *overruled in part on other grounds by Bond v. United States*, 564 U.S. 211, 216, 220 (2011). Appellants allege that they sustained an injury to their cannabis businesses and related property. In the Article III standing context, a party's "[o]wnership interest is determined under the law of the state in which the interest arose." *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) ("The claimant's burden under Article III is not a heavy one; the claimant need demonstrate

2007)). Indeed, "federal courts are required to examine sua sponte jurisdictional issues such as standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). Therefore, Appellants must establish Article III standing irrespective of whether the district court dismissed their claims for lack of statutory or constitutional standing.

only a colorable interest in the property, for example . . . .”). No party disputes that California recognizes cannabis-related property interests. *See e.g.* Cal. Health & Safety Code § 11362.1; Cal. Bus. & Prof. Code §§ 26000–26260. Accordingly, Appellants satisfy the injury requirement for Article III standing.

To prove causation, Appellants must show that the injury is “fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.” *Lujan*, 504 U.S. at 560–61 (cleaned up). In this case, there is no dispute that Appellants plead that their alleged injuries were caused by Appellees’ actions.

In contrast, the parties disagree respecting redressability in this case. Appellees contend Appellants’ alleged injuries are not redressable because they relate to a cannabis business, which is illegal under federal law. According to them, this means any remedy would contravene federal law and constitute an illegal mandate. Appellants, in contrast, argue that their injury based on Appellees’ past conduct could be redressed by the money damages that they seek in this action—noting that various federal courts have exercised jurisdiction over cases where the plaintiffs’ activities contravened the Controlled Substances Act.

“To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered.” *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (cleaned up). However, “if the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing.” *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). Redressability invokes the separation of powers, asking whether the remedial action

requested is "committed to the judicial branch." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1192, 1200 (9th Cir. 2017). As such, evaluating the issue of redressability "requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales*, 688 F.2d at 1267.

In this case, the district court could fashion a remedy that would redress Appellants' alleged injury. To determine the extent of the district court's remedial power, we "assume that [the] plaintiff's claim has legal merit." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("Although standing in no way depends on the merits of the plaintiff's [claim], it often turns on the nature and source of the claim asserted.") (citation omitted).

Here, Appellants seek money damages pursuant to RICO based on alleged financial injuries to their business. An award of money damages is the quintessential remedy for a civil RICO violation. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987) ("[RICO is] designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees."); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82, 498 (1985) ("The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.") (internal quotation omitted). Contrary to Appellees' argument, the fact that Appellants seek damages for economic harms related to cannabis is not relevant to whether a court could, theoretically, fashion a remedy to redress their injuries. Therefore, the alleged harm in this case is redressable by the federal court. Accordingly, we find that Appellants have Article III standing.

B.

We next consider whether Appellants have *statutory*
standing to bring their RICO claims.  *See Canyon Cnty. v.
Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008)
("[T]he question of statutory standing is to be resolved . . .
once Article III standing has been established.") (citation
omitted).

RICO provides that it is "unlawful for any person
through a pattern of racketeering activity . . . to acquire or
maintain, directly or indirectly, any interest in or control of
any enterprise which is engaged in, or the activities of which
affect, interstate or foreign commerce" and proscribes
conspiracy to do the same.  18 U.S.C. § 1962(b), (d).[2]  Under
RICO's standing provision, "[a]ny person injured in his
*business or property* by reason of a violation" of the statute's
substantive provisions may bring a RICO claim in federal
court to recover treble damages and costs.  *Id.* § 1964(c)
(emphasis added).  We have recognized that to establish
statutory standing pursuant to RICO, a plaintiff "must show:
(1) that his alleged harm qualifies as injury to his business or
property; and (2) that his harm was by reason of the RICO
violation, which requires the plaintiff to establish proximate
causation."  *Canyon Cty.*, 519 F.3d at 972 (cleaned up); *see
also Sedima*, 473 U.S. at 496.

Here, Appellants allege that Appellees devised a
racketeering scheme to defraud them, committed acts of mail
and wire fraud, and injured them in "their business and
property, because their moneys, profits, and property" from

---

[2] To establish a pattern of racketeering activity, a party must allege two
or more predicate acts as defined in 18 U.S.C. § 1961, such as mail and
wire fraud.

their cannabis enterprise "have been wrongly diverted to and converted by Defendants." It is therefore clear from the face of the complaint that Appellants' claimed injury arises pursuant to RICO Section 1964(c). Accordingly, for Appellants to establish RICO standing, the statute's use of the term "business or property" must encompass businesses and property engaged in the cultivation, sale, and marketing of cannabis—an enterprise that is legal under California law, but illegal under federal law.

The text of RICO does not define either "business" or "property." For this reason, courts usually look to state law to determine whether a particular interest amounts to property. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc) ("Without a harm to a specific business or property interest—a categorical inquiry *typically* determined by reference to state law—there is no injury to business or property within the meaning of RICO.") (emphasis added). California law, unlike federal law, recognizes licensed cannabis businesses as well as a property interest in cannabis. *Compare* Cal. Health & Safety Code § 11362.1 *and* Cal. Bus. & Prof. Code §§ 26000-26260 *with* 21 U.S.C. § 881(a)(1); *see also United States v. Jeffers*, 342 U.S. 48, 52–53 (1951) (explaining that there is no cognizable property interest in narcotics because they are items deemed contraband under federal law).

We observe that numerous courts have held that state law does not control where RICO's statutory purpose or congressional intent in enacting the statute conflicts with the relevant state law. *See e.g.*, *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 565 (6th Cir. 2013) (explaining "whether Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO" determines whether "business or property" is recognized for standing

purposes); *DeMauro v. DeMauro*, 115 F.3d 94, 96–97 (1st Cir. 1997) ("Where to set the 'business or property' threshold depends on federal statutory purpose[.]"); *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) ("Of course, we are not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO."). We agree with the reasoning of our sister circuits on this point.

This presents us with the following question: do either the statutory purpose of RICO or the congressional intent animating its passage conflict with the California laws recognizing a business and property interest in cannabis? We conclude that they do.

As always, we begin with the statute. *See Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation, as we always say, begins with the text[.]"). RICO does not define the terms "business" or "property," and so the statutory text does not compel an answer. However, a court "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015).

Looking to RICO as a whole, it is clear that Congress did not intend "business or property" to cover cannabis-related commerce. When Congress enacted RICO, it expressly defined "racketeering activity" to include the "manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in" cannabis. 18 U.S.C. § 1961(1)(D); 21 U.S.C. §§ 802, 812. Indeed, at least one other court has correctly recognized that cultivating cannabis for sale

constitutes racketeering activity under RICO, even if it is legal under state law.  *See Safe Sts. for All. v. Hickenlooper,* 859 F.3d 865, 882 (10th Cir. 2017).  Because RICO's definition of racketeering activity necessarily encompasses dealing in cannabis, it would be inconsistent to allow a business that is actively engaged in cultivation of and commerce in cannabis to recover damages under RICO for injury to that business.

We also note that Congress passed the Controlled Substances Act (CSA) and RICO in the same year.  *See* Controlled Substances Act (CSA), Pub. L. No. 91-513, 84 Stat. 1236 (1970) (codified as amended at 21 U.S.C. § 801 *et seq.*); Racketeer Influenced and Corrupt Organizations Act (RICO), Pub. L. No. 91-452, 84 Stat. 941 (1970) (codified as 18 U.S.C. § 1961 *et seq.*).  At the time it was passed—and ever since—the CSA has listed both "Marihuana" and its psychoactive chemical component Tetrahydrocannabinol (THC) as Schedule I controlled substances, which are illegal to "manufacture, distribute, or dispense, or possess" with intent do so.  21 U.S.C. § 812(c); *see also* 21 C.F.R. 1308.  The CSA declares it unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense" these substances.  21 U.S.C. § 841.  The CSA further provides that all such "substances which have been manufactured, distributed, dispensed, or acquired in violation of [the CSA]," "shall be subject to forfeiture to the United States and *no property right shall exist in them.*"  *Id.* § 881(a)(1) (emphasis added).  This includes money given in "exchange for a controlled substance."  *Id.* § 881(a)(6).

Since RICO and the CSA were enacted almost contemporaneously, it is clear that Congress did not intend the term "business or property" in RICO to include cannabis

businesses or property.  Congress enacted RICO as part of a comprehensive legislative package aimed at combating the influence of organized crime on interstate commerce.  S. Rep. No. 91-617, at 76 (1969).  Considering the laws in tandem, it is evident that Congress would have considered a cannabis business to be a form of organized crime and that Congress would not have intended RICO to provide damages for injury to interests in which it explicitly disclaimed the existence of any property rights.

Although some states, such as California, have changed their legal regimes pertaining to the use, cultivation, distribution, and sale of cannabis since the enactment of RICO and the CSA, these activities are still clearly illegal under federal law.  Indeed, were we to substitute a drug like heroin for cannabis for the purposes of our analysis, the conclusion seems obvious: Congress could not have intended to allow a heroin dealer to recover RICO damages from someone who, by mail and wire fraud, stole a shipment of heroin.  Otherwise, RICO would serve to protect the same variety of conduct it was intended to combat.  For these reasons, we hold that Appellants lack a statutory right to bring a claim under RICO.

### III.
### CONCLUSION

For these reasons, we **AFFIRM** the district court's order dismissing Appellants' RICO claims.

**AFFIRMED.**