**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>BIOSERV CORPORATION,<br>         Debtor. | BAP No. SC-22-1213-BGF<br><br>Bk. No. 14-08651-MM11 |
| GXP CAPITAL, LLC,<br>         Appellant,<br>v.<br>ARGONAUT MANUFACTURING<br>SERVICES, INC.; TELEGRAPH HILL<br>PARTNERS III, L.P.; TELEGRAPH HILL<br>PARTNERS III, INVESTMENT<br>MANAGEMENT, LLC,<br>         Appellees. | Adv. No. 21-90063-MM<br><br>**MEMORANDUM**∗ |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

Before: BRAND, GAN, and FARIS, Bankruptcy Judges.

### INTRODUCTION

Appellant GXP Capital, LLC ("GXP") appeals an order dismissing its

adversary complaint for various state-law claims against appellees Argonaut

Manufacturing Services, Inc. ("Argonaut"), Telegraph Hill Partners III, L.P. and

Telegraph Hill Partners III, Investment Management, LLC ("THP") (together

---

∗ This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value,
*see* 9th Cir. BAP Rule 8024-1.

with Argonaut, "Defendants"). Defendants moved to dismiss GXP's complaint under Civil Rules 12(b)(1)[1] and (6), arguing that GXP lacked Article III standing and failed to state a claim for relief. The bankruptcy court determined that GXP lacked Article III standing and dismissed all claims under Civil Rule 12(b)(1). It also determined that some of the claims were time-barred and alternatively dismissed those claims, without prejudice, under Civil Rule 12(b)(6).

We conclude that the bankruptcy court did not err in determining that GXP failed to establish Article III standing and dismissing all claims under Civil Rule 12(b)(1). Even if GXP had standing, we conclude that GXP failed to state a claim for relief under Civil Rule 12(b)(6) on its claims for breach of contract and misappropriation of trade secrets.[2] Accordingly, we AFFIRM.

## FACTS

### A.    Events in the main case

Debtor Bioserv Corporation ("Debtor") was in the pharmaceutical business. Albert Hansen was its chairman and CEO. Hansen is also the CEO of KESA Partners, Inc. ("KESA"), which acquired Debtor in November 2012. Between November 2012 and when Debtor filed for bankruptcy in October 2014, it had incurred net losses in excess of $2.5 million. Hansen is now the CEO

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] GXP did not challenge in its opening brief the bankruptcy court's dismissal of its remaining five claims under Civil Rule 12(b)(6) as time-barred, so any appeal of the dismissal of those claims on that basis has been waived. *Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir.), *cert. denied*, 142 S. Ct. 402 (2021) (portion of trial court's adverse ruling not challenged in opening appeal brief is waived).

of the reorganized debtor, GXP CDMO, Inc.; appellant GXP is its subsidiary.

Debtor filed a chapter 11 bankruptcy case on October 31, 2014. Months later, Hansen pursued investors to help reorganize Debtor. One entity he met with was Argonaut. Hansen sent an email presentation about Debtor to Wayne Woodard, CEO of Argonaut.[3] Woodard toured Debtor's facility and was given Debtor's financial information. During this time, Woodard signed on behalf of Argonaut two nondisclosure agreements ("NDAs"). Hansen also shared with Woodard his personal views of the Official Committee of Unsecured Creditors ("OCC") and its counsel and Debtor's plans for reorganization. Ultimately, negotiations between Debtor and Argonaut ceased on October 30, 2015. No one outside of the parties was aware of these negotiations during this time period.

Meanwhile, Debtor filed a disclosure statement and proposed plan of reorganization ("First Plan"). The First Plan proposed a distribution to general unsecured creditors of preferred stock in Debtor, which Debtor estimated would provide a 15% to 50% return.

Several key events occurred in Debtor's case in late 2015. In October, Debtor moved for approval of its disclosure statement. In addition to its other debts, Debtor reported in its October 2015 operating report that it owed $494,000 in unpaid taxes.

Debtor also sought to reject its executory contracts with Tenax Therapeutics, Inc. ("Tenax"). Debtor described the soured relationship between the parties and current dispute over an outstanding debt allegedly owed by

---

[3] THP was to provide Argonaut the funds for any potential investment in Debtor.

3

Tenax. Tenax opposed the rejection motion and asserted that Debtor was holding some of Tenax's equipment "hostage" in an attempt to coerce a payment for a debt Tenax claimed it did not owe to Debtor.

On November 10, the OCC filed its statement of position on the disclosure statement and First Plan. The OCC did not object to the disclosure statement, but it did express concerns with the First Plan: whether KESA's contributions would suffice to keep Debtor afloat; whether there was enough new business to sustain Debtor's future success; and whether Debtor was able to pay its administrative expense obligations.

In addition, Tenax filed an objection to Debtor's disclosure statement. It argued that the disclosure statement failed to provide sufficient details about litigation claims Debtor wished to pursue and how Debtor planned to repay KESA for unapproved, postpetition advances of over $200,000. Tenax also argued that the First Plan was not confirmable; it violated the absolute priority rule and was not feasible.

On November 17, THP sent the OCC a nonbinding offer (the "Offer") to acquire Debtor's assets for $1.27 million. That same day, Tenax filed an emergency motion to appoint a chapter 11 trustee to administer Debtor's case ("Appointment Motion"). Tenax asserted that a trustee should be appointed due to Debtor's "incompetence and gross mismanagement" and the "inherent conflict" and "self-dealing" of KESA and Hansen. Tenax again noted the equipment dispute with Debtor and asserted that Debtor was intentionally breaching another agreement between the parties by refusing to ship pharmaceuticals to one of Tenax's customers. Tenax also complained of Debtor's

4

litigious nature and accused Debtor of abusing the bankruptcy process by using it as a litigation platform to "shake down" creditors and customers and maximize profit to KESA.

On November 18, the OCC filed a statement supporting the Appointment Motion. The OCC disclosed that it had received the Offer to purchase Debtor's assets, but it would not disclose the buyer's identity per the buyer's instruction. Though it had just received the Offer the previous day, the OCC maintained that it would provide cash for unsecured creditors and was superior to Debtor's stock offer. The OCC asserted that a trustee must be appointed to evaluate the Offer because Debtor could not be trusted to consider and respond to it in good faith.

Debtor opposed the Appointment Motion. It denied Tenax's allegations of misconduct and argued that Tenax had not submitted any evidence supporting cause to appoint a trustee.

The bankruptcy court issued a tentative ruling on the Appointment Motion, stating that it was inclined to appoint a trustee given the OCC's support. Debtor filed a response to the tentative. The bankruptcy court also issued a tentative ruling rejecting the First Plan, finding that it violated the absolute priority rule and was infeasible.

On November 19, the bankruptcy court held a hearing on the Appointment Motion and Debtor's disclosure statement. Counsel for Tenax informed the court that the dispute with Debtor had been resolved. The court continued the Appointment Motion to December 17 to give Debtor "full due process" before deciding whether to appoint a trustee.

On November 30, Debtor filed a status report stating that it had not yet received a copy of the Offer as promised by counsel for the OCC at the November 19 hearing. However, the OCC had informed Debtor on November 24 that the buyer had withdrawn it.[4] In any case, Debtor still wanted a copy of the undisclosed Offer to better prepare its supplemental opposition to the Appointment Motion.

On December 10, unbeknownst to the court, KESA sent a letter to Defendants claiming that Defendants had breached the NDAs by using Debtor's confidential information to make the Offer. KESA demanded that Defendants immediately provide it with a copy of the Offer and warned that it would sue them for breach of the NDAs if they failed to do so.

Also on December 10, Debtor filed its supplemental opposition to the Appointment Motion, arguing that the motion was moot because the Tenax dispute was resolved. Debtor further argued that the OCC's accusation that Debtor could not be trusted to evaluate the Offer was unsubstantiated. Debtor said it had since learned that THP was the financial entity backing the now-withdrawn Offer, but Debtor did not disclose Argonaut's involvement or the breach letter KESA sent to Defendants. Finally, Debtor argued that appointing a trustee would cause its immediate demise, resulting in no payment for creditors. Debtor relied on KESA's managerial and financial support to stay

---

[4] Although Debtor did not name Defendants as the buyer in its November 30 status report, and its counsel continued to argue that Debtor did not learn of the buyer's identity until December 10, 2015, Hansen stated in a declaration that Woodard (or his colleague) had told Hansen at the November 19, 2015 hearing for the Appointment Motion that Defendants had made the Offer.

afloat, which KESA would withdraw if a trustee was appointed. Debtor also filed an amended disclosure statement which still offered only stock to unsecured creditors.

In further support of the Appointment Motion, the OCC argued that the estate could not realize a fair market sale of Debtor without a trustee and that a sale was the only way creditors would receive cash. The OCC had no confidence that Debtor would propose a plan that was in the best interest of creditors, because Debtor had over a year to propose a confirmable plan but only attempted to amend the disclosure statement and First Plan after the Appointment Motion was filed. Even so, the amendments were insufficient because, among other things, the new plan still required creditors to take stock in the reorganized debtor.

On December 17, the bankruptcy court held the continued hearing on the Appointment Motion and Debtor's disclosure statement. When KESA's counsel commented that Debtor had still not seen the undisclosed Offer that seemed to be motivating the OCC to want a trustee, the court stated that it would not give the Offer "any weight" in its ruling. The court then proposed the option of appointing an examiner instead of a trustee. Tenax and the OCC accepted the alternative of an examiner. With that, the court said it would announce its ruling at a continued hearing on December 21.

At the December 21 hearing, the bankruptcy court found that "cause" existed to appoint either a trustee or an examiner based on: (1) the court's inability to trust Debtor's management after receiving financial information conflicting with its representations that success was "right around the corner";

(2) Debtor's mismanagement of its accountings; (3) Debtor's poor relationship with creditors, exemplified by its demand that Tenax waive its claim in return for packaging material; (4) the lack of evenhandedness and self-dealing by KESA with regard to the First Plan, which suggested that KESA was treating itself better than creditors; and (5) the OCC's lost confidence in Debtor's management. After considering Debtor's preference of an examiner over a trustee, and KESA's willingness to continue supporting Debtor if an examiner was appointed, the bankruptcy court said it would appoint an examiner. It continued the hearing on the Appointment Motion and Debtor's disclosure statement to January 21, 2016.

The bankruptcy court entered a written order consistent with its oral ruling appointing an examiner ("Appointment Order"). It ultimately vacated the January 21, 2016 hearing.

In late 2016, the examiner sold the majority of Debtor's assets for $3.6 million. Debtor's pre- and postpetition causes of action were excluded from the sale. Debtor did not oppose the sale.

In April and May 2017, the bankruptcy court approved Debtor's sixth amended disclosure statement and third amended chapter 11 plan. Unsecured creditors were paid 100% of their allowed claims. GXP CDMO, Inc. was the reorganized debtor and assigned its causes of action to GXP.

B.    **GXP's adversary complaint and Defendants' motion to dismiss**

After the bankruptcy court granted Defendants' motion to dismiss GXP's original adversary complaint with leave to address Article III standing issues, GXP filed its first amended complaint ("FAC") realleging claims for breach of

8

contract and misappropriation of trade secrets, and adding five new claims for negligent and intentional interference with prospective economic advantage, negligent and intentional interference with business relationship, and breach of fiduciary duty. GXP's claims were based on the same facts and alleged the same injuries and damages.[5]

GXP alleged that Defendants used Debtor's confidential information to formulate the Offer in breach of the NDAs and falsely stated that the Offer was based on public information. GXP alleged that Defendants intentionally concealed the NDAs from the OCC and, indirectly, the court. GXP alleged that the Offer, as well as Defendants' disclosure to the OCC and its counsel of Hansen's unfavorable comments about them, caused the OCC to withdraw its support for the First Plan and instead support a chapter 11 trustee, and that the OCC's sudden change of position caused the court to consider, and ultimately appoint, an examiner. GXP alleged that Defendants induced Tenax to file the Appointment Motion and induced the OCC to support it.

But for the OCC's support, alleged GXP, Tenax would never have moved for the appointment of a trustee, and the OCC only supported it because of the Offer. GXP alleged that appointing an examiner caused Debtor to lose control of the business and the opportunity to negotiate and confirm the First Plan. Had Defendants not scuttled Debtor's plan negotiations, alleged GXP, Debtor would have negotiated a confirmable plan with the OCC and either sold or

---

[5] GXP sued Defendants for these and other claims previously in three other courts, including the Southern District of California ("SDC"), which dismissed the action there for lack of subject matter jurisdiction as the parties then lacked complete diversity.

reorganized for a value of at least $12 million, as opposed to being ordered to participate in a forced sale for $3.6 million. GXP sought $20 million in general damages, plus punitive damages and attorney's fees.

GXP additionally alleged that Debtor was prevented from presenting evidence or further argument at the continued hearing on the Appointment Motion on December 21. GXP said Debtor would have argued against the appointment of either a trustee or examiner, and that Debtor only supported an examiner when it came down to those choices. GXP said Debtor would have also elaborated on Defendants' role in disrupting Debtor's negotiations with the OCC over a confirmable plan and in the examiner's appointment. GXP alleged that Debtor disagreed with the court's findings in the Appointment Order, but refrained from filing an objection to those findings since no evidence was allowed.

Defendants moved to dismiss the FAC under Civil Rules 12(b)(1) and (6), arguing that GXP did not have Article III standing, but even if it did, the FAC failed to state a claim for relief. For standing, Defendants argued that GXP's alleged injury – Debtor's failed plan and resulting lost opportunity to sell at a higher price than Debtor actually sold for – did not constitute an "injury in fact" because Debtor had no legally protected interest in either a successful plan of reorganization or preventing Defendants from negotiating with the OCC. "Causation" was also lacking for standing and for stating a claim because GXP did not, and could not, plausibly allege that Defendants' conduct was "fairly traceable" to or "proximately caused" any of the alleged damages; there was no causal link between the alleged conduct – Defendants' purported breach of the

NDAs and the Offer, and the alleged injury – Debtor's scuttled plan and resulting loss of millions of dollars. Defendants argued that the examiner's appointment was for reasons wholly unrelated to them and the Offer, and that GXP had failed to address the court's basis for dismissing the original complaint. The court had found that the examiner's appointment and the failure of Debtor's plan and subsequent sale were due to Debtor's mismanagement and the Tenax dispute. Finally, argued Defendants, even if GXP had standing, the FAC failed to allege claims for breach of contract or trade secret misappropriation. The FAC was devoid of any factual allegations that Defendants breached the NDAs with the Offer, which contained only publicly available information, or that Defendants used or disclosed Debtor's alleged trade secrets let alone through improper means.

In opposition, GXP argued that, because it was asserting common law contract and tort claims and not public or statutory rights, it did not need to allege the usual factors of injury in fact, causation, and redressability to establish standing; it only needed to allege that a breach or violation of Debtor's private rights occurred. But if the tripartite Article III factors were necessary, argued GXP, the FAC sufficiently pleaded them. GXP argued that Debtor had a legally protected interest in the NDAs and that Defendants would abide by them. The FAC pleaded that Debtor had a protected interest in the second NDA's implied "standstill" provision and Debtor's ongoing negotiations with the OCC for a confirmable plan. The standstill provision, argued GXP, precluded Defendants from going behind Debtor's back and using confidential information to make an offer to the OCC. Thus, argued GXP, injury in fact was

pled. Causation was also pled for both standing and for stating a claim. GXP argued that the facts alleged in the FAC supported its claim that Defendants' conduct directly and proximately caused the termination of Debtor's negotiations with the OCC and the subsequent examiner's appointment. GXP argued that Defendants' breaches, and no other independent factors, caused Tenax to file the Appointment Motion and the OCC's support for it. Without the Appointment Motion, argued GXP, there would have been no Appointment Order, appointment of an examiner, and Debtor's resulting damages.

After post-hearing briefing, the bankruptcy court entered an order granting the motion to dismiss the FAC with prejudice, determining that GXP failed to satisfy the three factors for Article III standing. The court determined that its findings regarding the examiner's appointment in the main case were law of the case and binding on the parties in the adversary proceeding. Those indisputable findings ultimately precluded GXP from being able to establish standing or the ability to recover damages for the alleged hostile Offer that did not adversely affect the outcome of the bankruptcy case. GXP now appeals.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Did the bankruptcy court abuse its discretion in applying the doctrine of law of the case?

2.    Did the bankruptcy court err in dismissing the FAC?

12

3.     Did the bankruptcy court abuse its discretion in denying GXP's request for jurisdictional discovery?

## STANDARDS OF REVIEW

We review the bankruptcy court's decision whether to apply the law of the case doctrine for an abuse of discretion. *NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC),* 638 B.R. 403, 408 (9th Cir. BAP 2022) (citing *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000)). The bankruptcy court's decision whether to permit jurisdictional discovery is reviewed for abuse of discretion. *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson,* 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

We review the bankruptcy court's Article III standing determination de novo. *Shulman v. Kaplan,* 58 F.4th 404, 407 (9th Cir. 2023). Under de novo review, we consider a matter anew, as if the bankruptcy court had not decided the matter previously. *Mele v. Mele (In re Mele),* 501 B.R. 357, 362 (9th Cir. BAP 2013). Any facts expressly or impliedly found by the bankruptcy court in determining standing are reviewed for clear error. *Denning v. Bond Pharmacy, Inc.,* 50 F.4th 445, 450 (5th Cir. 2022). A factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010).

We may affirm on any ground supported by the record, whether or not the bankruptcy court relied upon, rejected, or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion in applying law of the case.**

The law of the case doctrine grants a court discretion to decline "reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Rebel Oil Co. v. Atl. Richfield Co.,* 146 F.3d 1088, 1093 (9th Cir. 1998). Issues decided in the main bankruptcy case are law of the case in adversary proceedings associated with that case. *See Rickert v. Specialized Loan Servicing, LLC (In re Rickert),* BAP No. MT-20-1100-BGF, 2020 WL 7043609, at *4 (9th Cir. BAP Dec. 1, 2020), *aff'd,* No. 21-60003, 2021 WL 5985026 (9th Cir. Dec. 16, 2021).

While the earlier decision should be followed, a court may decide, in its discretion, to revisit the issue if: (1) the first decision was clearly erroneous and would result in manifest injustice; (2) there has been an intervening change in the law; or (3) substantially different evidence was produced at a subsequent trial. *FDIC v. Kipperman (In re Com. Money Ctr., Inc.),* 392 B.R. 814, 832-33 (9th Cir. BAP 2008).

The bankruptcy court ruled that its findings for the examiner's appointment were law of the case and that they precluded GXP from prevailing on any claims against Defendants. The gravamen of the FAC was that

Defendants' breach of the NDAs and submission of the Offer led to the examiner's appointment and, ultimately, the failure of Debtor's First Plan. However, the bankruptcy court found that the need for an examiner was due to reasons other than the Offer, and that the First Plan was not confirmable under the facts at the time. Specifically, the bankruptcy court appointed the examiner because of its inability to trust Debtor's management, Debtor's poor relationship with creditors, the lack of evenhandedness with regard to the First Plan which suggested that KESA was treating itself better than creditors and self-dealing, and the OCC's lost confidence in Debtor's management. In applying law of the case to these factual findings for purposes of the FAC, the court further noted that Tenax's Appointment Motion was filed before the November 19, 2015 hearing where the Offer's existence was disclosed, and Hansen had advocated for the appointment of an examiner and then failed to further oppose the Appointment Motion.

GXP does not dispute that the bankruptcy court made the findings it did in the Appointment Order. Rather, it argues that the court erred in applying law of the case to what it calls "disputed tentative findings made on less than a full record" and then giving such findings preclusive effect. GXP compares the procedure used to appoint the examiner to a preliminary injunction and argues that Debtor was wrongfully denied an evidentiary hearing to further oppose the appointment and to oppose the findings supporting it. We disagree.

The bankruptcy court rejected these arguments as "pure hogwash." Debtor had no less than four briefing opportunities and two hearings to oppose the appointment of a trustee or examiner. At the first hearing on November 19,

the court continued the matter to December 17 to give Debtor "full due process." GXP maintains that Debtor was denied an evidentiary hearing, but Debtor had several opportunities to present whatever evidence it wished before the court ruled, including evidence of Defendants' alleged breach of the NDAs and conspiracy with the OCC to harm Debtor. Further, the court reasoned at the time that an evidentiary hearing was not necessary; its distrust of Debtor and Debtor's poor financial condition and outlook were undisputed.

Though GXP argues that it was a "Hobson's choice" between a trustee and an examiner, the fact is Debtor agreed to an examiner and then did not further oppose the Appointment Motion. Debtor was working with the examiner and his hired advisor, whom Debtor recommended. Debtor also agreed to a sale by the examiner, and KESA was interested in making an overbid at any sale, which would, in Debtor's words, "sidestep" the First Plan. Debtor also never appealed the Appointment Order, so the facts were no longer disputed or tentative when the court made its decision to dismiss the FAC. If Debtor disagreed with the court's ruling in the Appointment Order, it was free to file an appeal. On this record, we do not find that the bankruptcy court abused its discretion by applying law of the case to the findings made in the Appointment Order.

GXP also argues that the bankruptcy court erred by ignoring the substantially different evidence exception to the law of the case doctrine. GXP contends that when it finally received a copy of the Offer in the SDC action, it realized that Defendants had misrepresented to the OCC that the Offer was formulated using exclusively public information. GXP argues, had Debtor been aware of this, it could have convinced the OCC not to support the Appointment

16

Motion, and the Appointment Order and the court's findings therein would never have materialized.

GXP argues that because the contents of the Offer were not known to Debtor until discovery in the SDC action two years later, the Offer meets the "substantially different evidence" exception. We disagree. First, it is not clear what difference it would have made to the OCC whether the Offer was based on private or public information or how this would have changed the outcome of the case. The OCC preferred cash over Debtor's stock proposal, and a sale was apparently the only way a cash payment could be obtained. Second, the court did not "ignore" this exception but considered and rejected it. The record refutes GXP's argument that the Offer's contents were substantially different from the evidence available to Debtor at the time of the examiner appointment. The breach letter KESA sent to Defendants on December 10, 2015, expressed the belief that Defendants had breached the NDAs by using nonpublic information to formulate the Offer, which is not substantially different than the evidence GXP claims to have adduced in the SDC action. Debtor had sufficient information about the Offer before the court appointed the examiner but for whatever reason chose not to disclose it.

Accordingly, the bankruptcy court did not abuse its discretion in declining to apply the exception; the document received in later discovery was not substantially different and would not have changed the outcome of the bankruptcy case.

17

**B. The bankruptcy court did not err in dismissing the FAC for lack of standing, but even if it did, the record supported dismissal for failure to state a claim.**

**1. Because GXP failed to satisfy the tripartite test for Article III standing, dismissal was proper under Civil Rule 12(b)(1).**

Under Civil Rule 12(b)(1), applicable here by Rule 7012, a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). A Civil Rule 12(b)(1) jurisdictional challenge can be either facial, *i.e.,* on the face of the complaint, or factual. *White v. Lee*, 227 F.3d 1214, 1424 (9th Cir. 2000). With a factual attack, a court can look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and it need not presume the truthfulness of the complaint's allegations. *Id.; see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (where jurisdiction is intertwined with the merits, the court need not assume the truth of the complaint's allegations if controverted by undisputed facts in the record).

For Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, the plaintiff has the burden to "clearly allege facts demonstrating each element." *Id.* (cleaned up).

18

GXP contends that the bankruptcy court erred by applying the Article III tripartite test and argues that alleging the breach itself conferred standing. GXP admittedly cites no controlling authority for its argument. It relies primarily on Justice Thomas's concurrence in *Spokeo* and Judge Ikuta's dissent in *Perry v. Newsom*, 18 F.4th 622 (9th Cir. 2021) (Ikuta, J., dissenting), for the proposition that alleging breach of contract alone satisfies the tripartite test to confer standing.

In *Spokeo*, the Court examined the standing requirement of "injury in fact" in a case involving a statutory violation and the violation of a procedural right in the Fair Credit Reporting Act. 578 U.S. at 333-34. The Court held that a plaintiff must show a "concrete" injury in fact – i.e., one that actually exists – for Article III standing in the context of a statutory violation. *Id.* at 341. In his concurrence, Justice Thomas observed the distinction between private plaintiffs suing for an alleged violation of their own rights, such as contract rights, and suits from private plaintiffs asserting claims vindicating public rights. He noted that common-law courts historically presumed that, in a suit for a violation of a private right, "the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded." *Id.* at 343-44 (Thomas, J., concurring). Following this same line of reasoning, Judge Ikuta stated in her dissent in *Perry* that violation of private contract rights is a traditionally recognized harm providing a basis for lawsuits in American courts, "whether or not the violation . . . resulted in economic damage or other injury." 18 F.4th at 639.

Justice Thomas's concurrence in *Spokeo* and Judge Ikuta's dissent in *Perry* are not binding authority. The few courts that have addressed the issue of

whether breach of contract alone, without any further harm or injury, can constitute a "concrete" injury in fact for Article III standing are divided. Some say breach alone is insufficient. *See e.g., Patel v. Univ. of Vt. & State Agric. Coll.*, No. 5:20-cv-61, 2021 WL 4523683, at *6 (D. Vt. Oct. 10, 2021); *Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016). Others say breach alone is sufficient. *See e.g., Denning,* 50 F.4th at 451; *Dinerstein v. Google, LLC,* 484 F. Supp. 3d 561, 573-74 (N.D. Ill. 2020); *In re Google Referrer Header Priv. Litig.,* 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020); *Culwick v. Wood*, 384 F. Supp. 3d 328, 338-39 (E.D.N.Y. 2019).

But even if alleging breach of contract is sufficient for a concrete injury in fact, GXP cannot show an injury in fact here. To establish injury in fact, a plaintiff must show that it suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). Debtor had no legally protected interest in the injuries GXP asserts resulted from Defendants' alleged breach of the NDAs. As the bankruptcy court correctly recognized, such "harms" do not exist. Debtor had no legally protected interest in negotiating a favorable, confirmable plan since the 120-day exclusivity period to propose a plan had expired. Debtor also had no legally protected interest in limiting the OCC's ability to assist in the formulation of a plan and to investigate Debtor, or any legal right in preventing an examiner from being appointed. In short, GXP did not allege a cognizable injury as it relates to the NDAs.

20

Even supposing that GXP had alleged (or could allege) a cognizable harm from Defendants' alleged breach of the NDAs, GXP's position that breach of contract alone establishes Article III standing is not supported. The two remaining factors of "traceability" and "redressability" are not automatically satisfied simply because plaintiff has alleged a breach. In cases holding that breach of contract alone is a concrete injury in fact, the courts still discussed or determined whether plaintiff had satisfied the remaining two factors for Article III standing. *See Denning*, 50 F.4th at 451-52; *Dinerstein,* 484 F. Supp. 3d at 578; *In re Google Referrer Header Priv. Litig.,* 465 F. Supp. 3d at 1011-12; *Culwick,* 384 F. Supp. 3d at 337-39. *See also Clemens v. ExecuPharm Inc.,* 48 F.4th 146, 156-58 (3d. Cir. 2022) (Phipps, J., concurring) (not deciding if breach of contract alone is enough for a concrete injury in fact, but still applying traceability and redressability to determine plaintiff's Article III standing); *Glennborough Homeowners Ass'n v. USPS,* 21 F.4th 410, 415-17 (6th Cir. 2021) (White, J., concurring) (same). Aside from the concurrence in *Clemens*, 48 F.4th at 159-161, GXP has not cited a case where a federal court dispensed with the other two factors necessary for Article III standing in a breach of contract case.

Assuming then that GXP had to satisfy "traceability" for Article III standing, which we must assume absent binding authority to the contrary, it failed to do so. To establish traceability, GXP must show a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. GXP failed to allege that Defendants' alleged breach of the NDAs and submission of the Offer to the OCC was fairly traceable to the injury it complains of. GXP alleged that the Offer was used by Defendants to manipulate the OCC into

ending negotiations with Debtor over a confirmable plan and supporting Tenax's Appointment Motion. Even if this were true, the bankruptcy court's prior and unappealed findings established that the examiner's appointment, failure of Debtor's First Plan and Debtor's ultimate sale were not "fairly traceable" to Defendants' alleged misconduct. Debtor's own conduct and other independent factors caused distrust by Tenax, the OCC, and the court which led to the examiner's appointment, and Debtor's declining financial condition and inability or refusal to propose a plan offering unsecured creditors cash instead of stock led to the failure of its First Plan.

The bankruptcy court rejected Debtor's "but for" logic that, had the court known Defendants submitted the Offer in violation of the NDAs, it would not have appointed the examiner. And it also found GXP's allegation that Debtor's case was heading for an "early and favorable" reorganization was "pure conjecture," especially since Debtor was advocating for a "quick sale" instead. The court also found that the OCC's lack of opposition to the disclosure statement was not determinative since the OCC reserved its plan confirmation objections and changed its position as Debtor's financial condition declined. We see no clear error in those findings.

Lastly, GXP had to show that its injury would likely be redressed by a favorable decision. *Lujan,* 504 U.S. at 561. "Redressability analyzes the connection between the alleged injury and requested judicial relief. It does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision." *All. United Ins. Co. v. Krasnoff*

22

*(In re Venegas)*, 623 B.R. 555, 563 (9th Cir. BAP 2020) (cleaned up). Since we have determined that GXP failed to allege an injury in fact that was fairly traceable to Defendants' conduct, we need not determine whether the bankruptcy court erred in finding that GXP failed to allege redressability.

On this record, we conclude that the bankruptcy court did not err in dismissing the FAC as to all claims under Civil Rule 12(b)(1).

**2. Even if GXP had Article III standing, dismissal of the FAC was proper under Civil Rule 12(b)(6).**

Even if GXP had Article III standing, dismissal of the FAC was proper under Civil Rule 12(b)(6) for GXP's failure to state a claim. The bankruptcy court did not dismiss the FAC on this basis, but we can affirm on any basis supported by the record, even if the bankruptcy court did not consider it. *Fresno Motors, LLC,* 771 F.3d at 1125.

A motion to dismiss under Civil Rule 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). To survive such motion, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While the court must accept as true all well-pled factual allegations in the complaint and construe them in a light most favorable to the plaintiff, *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011), the court need not accept as true "allegations that contradict

23

matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.),* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

A complaint may be dismissed as a matter of law if there is a lack of a cognizable legal theory or if there are insufficient facts alleged under a cognizable legal theory. *Conservation Force,* 646 F.3d at 1242. A complaint may also be dismissed as a matter of law if it discloses some fact that will necessarily defeat the claim. *Franklin v. Murphy,* 745 F.2d 1221, 1228-29 (9th Cir. 1984), *abrogated on other grounds by Neitzke v. Williams,* 490 U.S. 319 (1989).

In resolving a Civil Rule 12(b)(6) motion, a court's review is generally limited to the operative complaint. *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). However, courts may consider, without converting the motion to one for summary judgment, matters subject to judicial notice, documents submitted as part of the complaint, and documents incorporated by reference in the complaint if their authenticity is not questioned. *Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir. 2001).

As discussed above, although Debtor had a legal interest in the NDAs, Debtor had no legal right to negotiate a favorable, confirmable plan since the 120-day exclusivity period to propose a plan had expired, had no legal right to limit the OCC's ability to assist in the formulation of a plan, negotiate with Defendants or review offers to purchase Debtor, and had no legal right in preventing an examiner from being appointed. In other words, GXP's claims for

24

injuries it alleges resulted from Defendants' breach of the NDAs simply are not legally cognizable.

Even if such injuries were cognizable, GXP's claims for breach of contract and misappropriation of trade secrets failed because, based on the established facts, GXP could not plausibly show that the alleged damages Debtor incurred were proximately caused by Defendants' purported breach of the NDAs. *See Vu v. Cal. Com. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997) (breach of contract plaintiff must show that the damages were "proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain"); *Cherokee Chem. Co., Inc. v. Frazier*, No. CV 20-1757-MWF (ASx), 2020 WL 8410432, at *3 (C.D. Cal. Dec. 14, 2020) (plaintiff bringing trade secret misappropriation claim must allege "defendant's actions damaged the plaintiff"). As discussed above, conduct other than Defendants' proximately caused the court to appoint the examiner, the failure of the First Plan, and Debtor's ultimate sale. There were no facts GXP could have alleged that would change this result.

Accordingly, because GXP did not plead a legally cognizable claim for relief or could not plausibly show causation for purposes of stating a claim for breach of contract or misappropriation of trade secrets, it was proper to dismiss the FAC under Civil Rule 12(b)(6).

## C. The bankruptcy court did not abuse its discretion in denying GXP's request for jurisdictional discovery.

GXP argues that the bankruptcy court abused its discretion by denying its request to conduct jurisdictional discovery to establish facts that could have

satisfied the tripartite test for Article III standing. The court denied the request because GXP (1) declined the court's invitation to subpoena counsel for Tenax or the OCC, and (2) failed to seek a motion to compel or serve discovery even though the adversary had been pending for a year.

We see no abuse of discretion in the bankruptcy court's decision to deny GXP's discovery request. No amount of discovery could have cured GXP's lack of a legally cognizable interest in the injuries it claims Defendants caused. Nor would it have undone the fact that Debtor lost control of its business by its own actions.

## CONCLUSION

For the reasons stated above, we AFFIRM.