**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 29, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

DAVID JOSHUA BARTCH,

    Plaintiff - Appellee,

v.

MACKIE A. BARCH; TRELLIS
HOLDINGS MARYLAND, INC.,

    Defendants - Appellants.

No. 23-1211
No. 24-1049

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-03016-RBJ-MDB)**
_____

Caitlin C. McHugh, Lewis Roca Rothgerber Christie LLP, Denver, Colorado, (Chad S. Caby, Lewis Roca Rothgerber Christie LLP, Denver, Colorado; David S. Musgrave, Gordon Feinblatt LLC, Baltimore, Maryland, with her on the briefs) for the Defendants – Appellants.

Paul Howard Schwartz, Shoemaker Ghiselli + Schwartz LLC, Boulder, Colorado, (Daniel Jozwiak, Shoemaker Ghiselli + Schwartz LLC, Boulder, Colorado; Johnathan A. Helfgott, Lahti Helfgott LLC, Denver, Colorado, with him on the briefs) for the Plaintiff – Appellee.
_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

David Joshua Bartch ("Josh") and Mackie A. Barch ("Mackie")[1] were partners in Culta, LLC, a marijuana business licensed to operate under Maryland law. Josh temporarily relinquished his ownership in Culta. Even though Josh and Mackie had agreed Josh could later rejoin the business, Mackie prevented him from doing so. Josh sued Mackie and Mackie's company, Trellis Holdings Maryland, Inc. ("Trellis"), which holds a minority membership share in Culta, for breach of contract. In response, Mackie and Trellis did not plead an affirmative defense that the contract was illegal under federal drug laws. After a bench trial, the district court found Mackie and Trellis liable for breach of contract and awarded Josh $6.4 million in damages (the "original judgment"). Mackie and Trellis never appealed and also never paid.

Josh sought to enforce the original judgment. The district court granted post-judgment relief, ordering Mackie and Trellis to use their best efforts to sell Trellis's equity interest in Culta, to turn over the proceeds from any such sale, and to avoid devaluing Trellis's equity until the sale (the "judgment enforcement order"). Mackie and Trellis appealed (**No. 23-1211**), arguing—for the first time—that (1) Josh lacked standing to enforce the judgment because the redress he sought would violate the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904; and (2) the district court

---

[1] Because the parties have similar last names, we refer to them as "Josh" and "Mackie," consistent with their appellate and district court briefing.

lacked authority to award the relief under Colorado Rule of Civil Procedure ("C.R.C.P.") 69(g).

While that appeal was pending, Mackie and Trellis moved the district court to reconsider the original judgment under Federal Rule of Civil Procedure ("F.R.C.P.") 60(b)(4), making the same CSA standing argument. The court denied the motion (the "original judgment reconsideration order"), and Mackie and Trellis appealed (**No. 24-1049**). We consolidated the appeals. We affirm the original judgment. We vacate the judgment enforcement order due to public policy concerns and remand for further proceedings.

This case presents a question about the nature and extent to which a federal court may act to resolve a dispute related to a marijuana business that operates legally under state law. Numerous federal courts have grappled with this question. Like most of them, we do not discern a simple answer.[2] We share the dissent's public policy concerns about

---

[2] Although courts have come out in different ways, they have analyzed the issues presented by marijuana-related contracts without summary disposition. *See, e.g.*, *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) (holding that "the fact that [plaintiffs] s[ought] damages for economic harms related to cannabis" was irrelevant to defendants' standing challenge); *AgriAuto Genetics, LLC v. Harris*, No. 22-CV-273, 2023 WL 8371940, at *2 (E.D. Okla. Dec. 4, 2023) (dismissing contract claims under Rule 12(b)(6) because the court could not issue orders without violating the CSA); *Barak v. Rooster's Guide & Outfitting Adventures*, No. 19-CV-03556, 2023 WL 3178026, at *4 (D. Colo. May 1, 2023) (sua sponte raising that marijuana-related contract violated federal law and giving that as an "an additional basis for declining to enforce any agreement the parties had"), *reconsideration denied*, No. 19-CV-03556, 2023 WL 7003410 (D. Colo. Oct. 24, 2023); *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258-60 (D. Colo. 2022) (holding that "the mere fact that unlawful activity is involved in some way"—i.e., that a contract "might bear some relationship to marijuana"—"does not automatically foreclose contract relief" and weighing various factors to determine if public policy would be violated by enforcement of the

the judgment enforcement order but think the better course is to remand to the district court to address them.

---

contract term); *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 834-35 (D. Colo. 2016) (declining to find marijuana-related insurance contract void on public policy grounds); *Hemphill v. Liberty Mut. Ins. Co.*, No. 10-861, 2013 WL 12123984, at *2 (D.N.M. Mar. 28, 2013) (holding federal court sitting in diversity could not require an insurer to pay plaintiff's future medical expenses for medical marijuana use because to do so would violate federal law and policy); *Erickson v. Pfiester*, No. 1:21-CV-00009, 2023 WL 6297343, at *2-4 (D. Alaska Sept. 27, 2023) (rejecting defendants' illegality defense under federal law because the court could order return of plaintiff's investment without causing a party to violate federal law); *Polk v. Gontmakher*, No. 2:18-CV-01434, 2020 WL 2572536, at *2-3 (W.D. Wash. May 21, 2020) (granting motion to dismiss contract action because remedy would be unlawful under the CSA); *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-CV-01104, 2020 WL 1855190, at *11-13 (D. Or. Apr. 13, 2020) (dismissing contract lost profits claim because awarding damages would require compelling defendants to violate the CSA); *Bart St. III v. ACC Enters., LLC*, No. 2:17-cv-00083, 2018 WL 4682318, at *4-6 (D. Nev. Sept. 27, 2018) (declining to dismiss breach of contract claims based on illegality because the possible remedy would not mandate illegal activity); *Ginsburg v. ICC Holdings, LLC*, No. 3:16-CV-2311, 2017 WL 5467688, at *9 (N.D. Tex. Nov. 13, 2017) ("Defendants . . . posit that, if a contract has an illegal purpose, it is automatically void and unenforceable. But . . . federal courts do not take such a 'black-and-white' approach to enforceability. . . .  [A]t the Rule 12(b)(6) stage . . . defendants have not established . . . that the [promissory] [n]otes are void and unenforceable."); *Mann v. Gullickson*, No. 15-CV-03630, 2016 WL 6473215, at *3-9 (N.D. Cal. Nov. 2, 2016) (concluding that the purported marijuana-related illegality did not render the parties' agreement unenforceable); *Tracy v. USAA Cas. Ins., Co.*, No. 11-00487, 2012 WL 928186, at *13 (D. Haw. Mar. 16, 2012) (declining to order insurer to pay proceeds for the replacement of medical marijuana plants because it would be "contrary to federal law and public policy").

## BACKGROUND

### A. *Factual History*

Between 2009 and 2015, Josh owned and operated a marijuana business in Colorado. In 2015, Josh and Mackie formed Doctor's Orders Maryland ("DOMD") and sought a license to open a similar business in Maryland. But out of concern that Josh's deferred judgment in Colorado for misdemeanor drug possession could hurt the license application, Josh and Mackie agreed that Josh would temporarily relinquish his ownership of DOMD and that Josh would be reinstated after the license was granted.[3] DOMD received the license, but Mackie refused to reinstate Josh's ownership interest. The Maryland business, renamed Culta, LLC, operated without Josh. Culta cultivates, processes, and dispenses marijuana.

Culta's operating agreement permits transfer of "all or any portion of [an] [i]nterest in [Culta]" (a) with the consent of Culta's other members, App., Vol. II at 294; or (b) without consent if transferred to certain "Permitted Transferee[s]," including another Culta member, an entity controlled by a member's family, or an "Affiliate[]," *id.* at 295-96.

Trellis owns a roughly 30 percent membership interest in Culta. Mackie is the sole owner, president, director, and alter ego of Trellis.

---

[3] The dissent mischaracterizes this oral contract between Josh and Mackie. It was not "to establish Culta." Dissent at 1, 4. Rather, it was "a contract whereby [Mackie] would receive both [Josh]'s and [his] DOMD equity stakes from [third parties] and hold both interests until [Josh] wanted his back." App., Vol. 1 at 60.

B. *Judgment Enforcement*

A judgment may be enforced in the judicial district where it was filed or in another judicial district if the judgment is registered there. *See* 28 U.S.C. § 1963. F.R.C.P. 69 provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

F.R.C.P. 69(a)(1). Maryland and Colorado judgment enforcement procedures are relevant here.

Both states provide for "charging orders"—"a remedy provided to the judgment-creditor of a" limited liability company ("LLC") or other business entity "member . . . by which the distributions . . . made to a member . . . are attached and diverted to the judgment-creditor in satisfaction of the judgment." 1 Larry Ribstein & Robert R. Keatinge, Ribstein & Keatinge on Limited Liability Companies § 10:2. Maryland's charging order provision states that "a creditor of a debtor [who] hold[s] an economic interest in [an LLC]" may request that a court "charge the economic interest of the debtor in the [LLC] for the unsatisfied amount of the debt." Md. Code Ann., Corps. & Ass'ns § 4A-607(b)(1). Colorado law also permits charging orders. *See* Colo. Rev. Stat. § 7-80-703.

Colorado law includes an additional relevant procedure: Under C.R.C.P. 69(g), a creditor may request that a court order a debtor "to apply [certain] property . . . towards satisfaction of [a] judgment."

## C. *Procedural History*

### 1. Original Judgment

Josh, invoking diversity jurisdiction, sued Mackie and Trellis in the United States District Court for the District of Colorado for breach of contract, conversion, constructive trust, unjust enrichment, and civil theft. He requested a declaration that Mackie and Trellis hold an interest in Culta for Josh's benefit, specific performance in the form of an order directing Mackie and Trellis to transfer that interest to Josh, compensatory damages, and treble damages. App., Vol. I at 37. Mackie and Trellis did not plead an affirmative defense of contract illegality. Before trial, "Mackie transferred nearly all of his interest in Trellis to two family trusts." App., Vol. III at 584 n.2.

After a bench trial, the district court found for Josh on the breach of contract claim and awarded him $6.4 million in damages. As noted above, we refer to this as the "original judgment." Mackie and Trellis did not appeal.

### 2. Judgment Enforcement Order

Mackie and Trellis failed to pay the $6.4 million judgment. App., Vol. II at 514 ("A little tiny piece of [the $6.4 million] has been paid through garnishment, but [Mackie] has not voluntarily paid any of it."). Josh served post-judgment discovery requests on Mackie and Trellis and learned that Trellis's equity interest in

7

Culta was likely the only asset that could fully satisfy the judgment. Josh then sought to enforce his judgment in the United States District Courts for the District of Maryland and the District of Colorado.

a.  *Maryland judgment enforcement proceedings*

In February 2023, Josh asked the District of Maryland—where he had registered the original judgment—to issue a charging order against Trellis's membership interest in Culta. On May 16, 2023, the court granted Josh's request, placing a lien on Trellis's interest in Culta and directing that Josh receive any Culta distributions due to Trellis. App., Vol. I at 253. On March 5, 2024, the district court denied Mackie and Trellis's motion to vacate the charging order under Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6). *See* Memorandum Opinion, *Bartch v. Barch*, No. 1:23-cv-0101, 2024 WL 943430 (D. Md. Mar. 5, 2024).

b.  *Colorado judgment enforcement proceedings*

On May 9, 2023, Josh asked the District of Colorado under F.R.C.P. 69(a)(i) for a C.R.C.P. 69(g) order requiring Mackie and Trellis "to (1) sell or otherwise monetize their equity in Culta and (2) turn over to [Josh] the proceeds of any transaction involving their Culta equity . . . until the judgment is fully satisfied." App., Vol. I at 74. He did not request a charging order under Colorado law.

On June 8, 2023, the district court granted the motion. As noted above, we refer to this as the judgment enforcement order.[4] It ordered:

---

[4] Mackie and Trellis refer to this as the "Turnover Order." Aplt. Br. at 1. Josh refers to its three components: the "Order to Divest," "Order to Turn Over Proceeds,"

(1) **Divestment.** Mackie and Trellis must "use their best efforts to sell a sufficient portion of [Trellis's] equity . . . in [Culta] to fully satisfy the [c]ourt's judgment . . . and to pay [certain] taxes." App., Vol. II at 335-36. The court directed that any sale comply with "Culta's operating agreement and applicable Maryland law." *Id.* at 336.

(2) **Proceeds turnover.** If any such sale is "consummate[d]," Mackie and Trellis "shall turn over the proceeds of such transaction(s) to [Josh] until the judgment is satisfied in full." *Id.*

(3) **No devaluation.** Until such sale is consummated, Mackie and Trellis "may not make any sale or pledge in respect of their Culta equity, and may not take any other action, that undermines the value of this equity." *Id.*

On June 29, 2023, Mackie and Trellis filed a notice of appeal from the judgment enforcement order—**No. 23-1211**.[5]

3. **Original Judgment Reconsideration Order**

On September 5, 2023, Mackie and Trellis moved under F.R.C.P. 60(b)(4) for relief from the original judgment, which had found Mackie and Trellis liable for breach of contract. They argued the district court lacked subject matter jurisdiction to enter the original judgment because the judgment compels a CSA violation.

The district court denied the motion. As noted above, we refer to this as the "original judgment reconsideration order." Mackie and Trellis timely filed a notice of appeal from this order—**No. 24-1049**.

---

and "Order Not to Devalue." Aplee. Br. at 9. We refer to the order as the judgment enforcement order to distinguish it from the other orders at issue in this appeal, and we discuss each of the three commands in the order as needed.

[5] The district court denied Mackie and Trellis's request for reconsideration of the judgment enforcement order.

9

4. **Appeals**

We consolidated the appeals.[6]

In **No. 23-1211**, the appeal of the judgment enforcement order, Mackie and Trellis argue that (A) Josh lacked standing to seek an order directing the sale of an interest in a marijuana business because such an order would violate the CSA, and (B) the district court lacked authority to enter the judgment enforcement order under C.R.C.P. 69(g).

In **No. 24-1049**, the appeal from the original judgment reconsideration order, Mackie and Trellis similarly argue that Josh lacked standing to seek damages for

---

[6] Although the parties do not contest the issue, we briefly explain why we have appellate jurisdiction under 28 U.S.C. § 1291.

We have jurisdiction in **No. 24-1049** because we may "reach the merits of an appeal from a denial of a Rule 60(b) motion, [if] the ruling or judgment the Rule 60(b) motion challenged was a [district court's] final decision." *Stubblefield v. Windsor Cap. Grp.*, 74 F.3d 990, 993 (10th Cir. 1996) (alterations and quotations omitted). The original judgment was final, so the original judgment reconsideration order is also appealable.

We also have jurisdiction in **No. 23-1211**. A judgment enforcement proceeding is a separate action for determining finality. *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1172 (10th Cir. 2023); 15B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Jurisdiction § 3916 n.19 (2d ed.). And a post-judgment order is "final if it disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings." *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012); *see also Hewlett-Packard Co. v. Quanta Storage, Inc.*, 961 F.3d 731, 741-42 (5th Cir. 2020) ("Orders permitting enforcement of judgments or requiring defendants to transfer property . . . dispose of claims to that property. [They] have long been treated as final and appealable."); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). The judgment enforcement order is final because it disposed of all the issues in Josh's post-judgment collection motion.

breach of contract in the original proceeding because the relief requested would violate the CSA.

\*     \*     \*     \*

To recap, Josh sued Mackie and Trellis, alleging they breached an oral contract to restore his ownership in Culta. Mackie and Trellis did not raise illegality at any time before the district court conducted a bench trial, found a breach, determined the damages amount, and entered judgment. They did not appeal or pay the judgment.

Josh requested and the district court granted a judgment enforcement order directing Mackie and Trellis to pay the judgment by selling their Culta equity. They appealed—No. 23-1211. They next moved to vacate the judgment under Federal Rule of Civil Procedure 60(b)(4) and appealed the denial of that motion— No. 24-1409. In both appeals, they argue Josh lacks standing.

Because resolution of the original judgment reconsideration order appeal, **No. 24-1049**, affects the availability of post-judgment relief at issue in **No. 23-1211**, we address **No. 24-1049** first. We then turn to **No. 23-1211**.

### NO. 24-1049: RULE 60(b)(4) ORIGINAL JUDGMENT RECONSIDERATION ORDER

Mackie and Trellis argue the original judgment was void because Josh lacked standing. We affirm the district court's original judgment reconsideration order.

#### A. *Federal Rule of Civil Procedure 60(b)(4)*

F.R.C.P. 60(b) "provides an exception to finality that allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of

circumstances." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (citation and quotations omitted). One of those circumstances—the only one at issue here—requires relief from a judgment if "the judgment is void." F.R.C.P. 60(b)(4).

A judgment is void "only in the rare instance where [the] judgment is premised on either" a "[t]otal want of jurisdiction" or "a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271 (quotations omitted). In the former instance, relief is generally reserved "for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *Johnson v. Spencer*, 950 F.3d 680, 697 (10th Cir. 2020) (quoting *Espinosa*, 559 U.S. at 271).[7] If "voidness is found, relief is . . . mandatory." *Id.* at 694-95.

F.R.C.P. 60(b)(4) has no fixed time limit for filing. *See* F.R.C.P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . ."); *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257, 260 (10th Cir. 1971); 11 Charles Alan Wright

---

[7] *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 n.6 (2009) (explaining that a collateral attack under F.R.C.P. 60(b)(4) was not permitted because it was "not a situation, for example, in which a bankruptcy court decided to conduct a criminal trial, or to resolve a custody dispute, matters so plainly beyond the court's jurisdiction that a different result might be called for" (quotations omitted)); *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (requiring "a plain usurpation of power" "and not an error of law" for finding voidness under F.R.C.P. 60(b)(4) (quotations omitted)); *In re Evans*, 506 F. App'x 741, 744 (10th Cir. 2012) (unpublished) (remarking that it is "hard to conceive of such a usurpation actually occurring").

All unpublished cases are cited for persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

& Arthur R. Miller, *Federal Practice & Procedure Civil* § 2862 (3d ed.).  But "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *Espinosa*, 559 U.S. at 270; *see also, e.g.*, *id.* at 275; *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).

We review a district court's F.R.C.P. 60(b)(4) ruling de novo.  *Johnson*, 950 F.3d at 695.

## B. *Application*

This appeal fails on multiple grounds.

First, although a party may defend against a breach of contract action by alleging the contract was contrary to public policy, *see, e.g.*, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982), F.R.C.P. 60(b)(4) does not provide relief from a final judgment based on that ground.  Under *Espinosa*, relief is available only for "a [t]otal want of jurisdiction" or "a violation of due process," 559 U.S. at 271 (quotations omitted).

Second, faced with this roadblock, Mackie and Trellis try to recast the contract illegality defense into a jurisdictional challenge, arguing Josh lacked standing.  But because illegality goes to whether Josh has a meritorious contract claim, not whether Josh has standing, they have not properly challenged jurisdiction.  *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 92 (1998) (declining to "call the existence of a cause of action 'jurisdictional'" because "[i]t would turn every statutory question . . . into a question of jurisdiction").

Third, Mackie and Trellis's standing argument fails.  Article III standing requires plaintiffs to show (1) they "suffered an injury in fact"; (2) "the injury was likely caused by the defendant"; and (3) "the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Josh alleged and proved an injury-in-fact:  breach of contract.  Mackie and Trellis caused Josh's breach-of-contract injury.  And Josh's breach-of-contract claim was redressable because he asked for and the district court awarded general compensatory damages for Mackie and Trellis's breach of contract.  App., Vol. I at 37, 66.

General compensatory damages may remedy a breach of contract provided the damages award does not require a losing party to violate federal law.  *See Ginsburg, v. ICC Holdings, LLC*, No. 3:16-CV-2311, 2017 WL 5467688, at *8 (N.D. Tex. Nov. 13, 2017); *Mann v. Gullickson*, No. 15-cv-03630, 2016 WL 6473215, at *7-8 (N.D. Cal. Nov. 2, 2016); *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) (holding district court could fashion a money damages remedy for plaintiffs' alleged Racketeer Influenced and Corrupt Organizations Act injuries to their cannabis business and therefore their claim was redressable).  The district court did not specify or require Mackie and Trellis to pay the $6.4 million in damages from any particular source.

\*    \*    \*    \*

The dissent would hold that although Mackie and Trellis never argued before entry of the original judgment that the contract was against public policy, we should find the

14

original judgment invalid. This approach ignores the procedural posture of this appeal and binding Supreme Court precedent. Recall that the district court held a bench trial, found that Mackie and Trellis had breached the contract, and ordered compensatory damages. Because Mackie and Trellis failed to appeal the original judgment, it was final subject to revision only through F.R.C.P. 60(b). The district court denied Mackie and Trellis's F.R.C.P. 60(b)(4) motion.

Even overlooking Mackie and Trellis's failure to argue contract illegality,[8] we cannot reverse the district court's F.R.C.P. 60(b)(4) order without violating *Espinosa*,

---

[8] The dissent states, "What the [majority] effectively tells us is that Defendants have waived or forfeited the defense of contract illegality." Dissent at 5. We have not said that. The dissent also states that "controlling Supreme Court precedent" holds "that the defense of illegality cannot be waived or forfeited." *Id.* That may be so, but the dissent overlooks that our resolution of these appeals does not depend on whether Mackie and Trellis waived a contract illegality defense.

As discussed above, we affirm in **No. 24-1049** based on the limited availability of relief under F.R.C.P 60(b)(4). And in **No. 23-1211**, we vacate and remand for the district court to consider the public policy concerns that both we and the dissent have raised.

We agree with the dissent that we must "apply Supreme Court cases that directly control." *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1035 (2024). It cites *Coppell v. Hall*, 74 U.S. 542 (1868), and *Oscanyan v. Arms Co.*, 103 U.S. 261 (1880), for the proposition that contract illegality cannot be waived.

But we note that the Supreme Court adopted Federal Rule of Civil Procedure 8(c)(1) in 1937. It provides: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . illegality." "If such defenses are not affirmatively pleaded, asserted with a motion under Rule 12(b) or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case." *Radio Corp. of Am. v. Radio Station KYFM*, 424 F.2d 14, 17 (10th Cir. 1970); *see* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1270 (4th ed. 2024 update) (stating that F.R.C.P. 8(c) "requir[es] the defendant to plead any of the listed affirmative defenses and any other matters of avoidance that it wishes to raise or risk waiving them").

15

which limits F.R.C.P. 60(b)(4) relief to when the court had "total want of jurisdiction" or violated due process. 559 U.S. at 271. The dissent offers no authority to the contrary but contends that our emphasis on F.R.C.P. 60(b)(4) is "misplaced." Dissent at 2.[9] Because this is an appeal of a F.R.C.P. 60(b)(4) order, the rule's limitations apply.

\* \* \* \*

We affirm the district court's denial of the motion for relief from judgment under F.R.C.P. 60(b)(4).

### NO. 23-1211:  RULE 69(g) JUDGMENT ENFORCEMENT ORDER

Mackie and Trellis appealed the F.R.C.P. 69 judgment enforcement order, arguing Josh lacked standing. Aplt. Br. at 13. They contend that the relief he sought—an order to sell Trellis's equity in Culta and turn over the proceeds to Josh—

---

In line with Rule 8(c), which the dissent does not address, we have said that "the affirmative defense of illegality is waived if not pleaded" and that "it cannot thereafter be raised for the first time on appeal." *Int'l Bhd. of Elec. Workers, Loc. Union Nos. 12, 111, 113, 969 v. Pro. Hole Drilling, Inc.*, 574 F.2d 497, 500 (10th Cir. 1978) (citing *Radio Corp. of Am.*, 424 F.2d at 14); *see also Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 883 (10th Cir. 2012) (unpublished).

Despite these intervening developments, the old cases may still be good law, but it does not matter. Our analysis does not depend on waiver of contract illegality.

[9] The dissent would bypass the strictures of F.R.C.P. 60(b)(4) and summarily dismiss a contract case "*[w]henever the illegality appears.*" Dissent at 2 (quoting *Coppell*, 74 U.S. at 558). The dissent entirely ignores *Espinosa*, a binding Supreme Court case, and takes both *Coppell* and *Kaiser Steel* out of context. *Coppell*—decided nearly 80 years before the Supreme Court adopted Rule 60(b)'s voidness exception, *see* Fed. R. Civ. P. 60 (1946)—held that a defendant could not waive a contract illegality defense. And *Kaiser Steel* noted that "a federal court has a duty to determine whether a contract violates federal law before enforcing it," 455 U.S. at 83, not whether a contract that violates public policy strips the court of jurisdiction under F.R.C.P. 60(b)(4).

16

would require a violation of the CSA, so the district court lacked the power to award it and therefore Josh lacked standing redressability. They further argue that the district court lacked authority to issue the judgment enforcement order under C.R.C.P. 69(g).

We reject Mackie and Trellis's arguments that Josh lacked standing to pursue enforcement of his judgment and that the district court lacked authority under C.R.C.P. 69(g). But we vacate the order and remand for the district court to consider whether its order would require Mackie and Trellis to violate public policy and, if so, whether the order should not have issued.[10]

### A. *Standing*

Josh had standing to seek enforcement of his judgment.[11] He alleged an injury-in-fact caused by Mackie and Trellis's failure to pay the judgment. Mackie and Trellis challenge only redressability. Their argument fails for reasons similar to our analysis in **No. 24-1049**: The district court could "fashion a remedy to redress" their failure to pay the judgment. *Shulman*, 58 F.4th at 409. And it could do so by

---

[10] The focus of **No. 23-1211**, consistent with Mackie and Trellis's arguments, is the judgment enforcement order, not, as the dissent contends, the contract and the original judgment. Once Josh "recover[ed] a valid and final personal judgment, his original claim[s] [were] extinguished and rights upon the judgment are substituted for it." Restatement (Second) of Judgments § 18 cmt. a (Am. L. Inst. 1982). And as discussed below, we remand for the district court to consider whether it went too far in exercising its equitable authority to issue the judgment enforcement order.

[11] Neither party explains whether Josh needed to show standing for his F.R.C.P. 69 request separately from showing standing leading to the original judgment. We assume he does.

17

issuing a writ of execution or an injunction ordering Mackie and Trellis to apply property to satisfy the judgment under C.R.C.P. 69(g). *See* F.R.C.P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise."). The property that the court ultimately specified in the order does not affect Josh's standing.[12]

## B. *Authority Under C.R.C.P. 69(g)*

Mackie and Trellis argue the district court lacked authority under C.R.C.P. 69(g) to enter the judgment enforcement order. They offer two reasons. First, "C.R.C.P. 69(g) cannot be used to replace a charging order" because a charging order is the exclusive remedy to apply an LLC member's equity interest to a judgment. Aplt. Br. at 15 (capitalization altered without notation). Second, even if a charging order is not an exclusive remedy, they lacked sufficient control over Trellis's Culta equity for the court to order them to divest it. *Id.* at 19-20. We disagree on both counts.

### 1. **Standard of Review**

We review a district court's entry of an order under F.R.C.P. 69 for abuse of discretion. *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 468 (10th Cir. 2023). A district court

---

[12] Although discovery showed that Trellis's equity interest in Culta was likely the only asset that could satisfy the judgment in full, *see, e.g.*, App., Vol. I at 75; App., Vol. II at 365 n.2; App., Vol. III at 587, Mackie also had a home encumbered by other debts, a vehicle, and a cell phone, App., Vol. I at 75. The district court could have ordered these assets applied to the judgment.

abuses its discretion if it makes an error of law, which we review de novo.  *Id.*;

*El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161, 1162 (10th Cir. 2016).

2. **Legal Background**

The following discusses (a) the federal rule applicable to money-judgment

enforcement proceedings and (b) the Colorado procedures for money-judgment

enforcement, including C.R.C.P. 69 and charging orders.

a. *F.R.C.P. 69*

As discussed above, F.R.C.P. 69 directs federal courts to follow state

procedures when enforcing a federal money judgment, unless federal law applies.

F.R.C.P. 69(a)(1); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d

1207, 1235 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001).  A district court's

F.R.C.P. 69 order is "valid if authorized by" the relevant state law.  *Wharf*, 210 F.3d

at 1235.

To determine the relevant state law, we look to controlling state supreme court

cases, but when none exist, we "attempt to predict how the highest court would

interpret the issue."  *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1164 (10th Cir.

2019) (quotations omitted); *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195

(7th Cir. 1996) (predicting what a state would "likely . . . permit" when faced with a

question of state law under F.R.C.P. 69); *see Huddleston v. Dwyer*, 322 U.S. 232,

236 (1944).

F.R.C.P. 69 requires only "substantial compliance with the procedural

provisions of any controlling state statutes or case law."  *McCarthy v. Johnson*,

19

172 F.3d 63, at *1 (10th Cir. 1999) (unpublished) (alterations omitted) (quoting

12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3012

(1997)); *see Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1452

(9th Cir. 1996) (explaining that F.R.C.P. 69(a) is "not meant to put the judge into a

procedural straitjacket" and requires only compliance "with the spirit of the Rules"

(quotations omitted)).

      b.  *Colorado judgment enforcement procedures*

Colorado provides various procedures for "the seizure and sale of the

judgment debtor's real and personal property."  1C Stephen A. Hess, Colo. Prac.,

Methods of Practice § 40:1 (7th ed.).[13]  Writs of execution are the standard remedy.

C.R.C.P. 69(a) provides that "[e]xcept [in garnishment proceedings] or an order of

court directing otherwise, process to enforce a final money judgment shall be by writ

of execution."  "A writ of execution is an order issued by the court that directs an

officer of the court to seize and sell the property of a judgment debtor and transfer

the sale proceeds over to the judgment creditor."  7 Robert L. Haig, Business and

Commercial Litigation in Federal Courts § 71:5 (5th ed.).

      But "a writ of execution . . . is not an exclusive remedy."  *First Nat'l Bank of*

*Denver v. Dist. Ct. in & for City & Cnty. of Denver*, 652 P.2d 613, 617 (Colo. 1982).

A plaintiff may also "employ supplemental proceedings in aid of execution to collect

---

[13] An LLC member's interest is intangible personal property.  *See JPMorgan Chase Bank, N.A. v. McClure*, 393 P.3d 955, 958-59 (Colo. 2017); Colo. Rev. Stat. § 7-80-702(1).

the judgment from the defendants' property." *Id.* This case concerns two supplemental procedures: the charging order under Colo. Rev. Stat. § 7-80-703 and C.R.C.P. 69(g). *See Compañía de Inversiones Mercantiles S.A.*, 58 F.4th at 469 (identifying C.R.C.P. 69(g) as "one [supplemental] procedure").

      i.   Colo. Rev. Stat. § 7-80-703

As noted above, "[a] charging order is a statutorily created remedy that . . . allows a judgment creditor to realize the value of a judgment debtor-LLC member's distributional interest in an LLC" while also "protect[ing] the LLC's ability to continue to operate and the interests of its other members." *JPMorgan Chase Bank, N.A. v. McClure*, 393 P.3d 955, 958 (Colo. 2017). It creates "a lien on the economic value that flows from membership in an LLC" that "diverts" such interest "to the judgment creditor, until the judgment is satisfied." *Id.* (quotations omitted). "[A]s a practical matter, the charging order is directed to the LLC" because it "requir[es] an LLC to redirect the debtor-member's distributions to the creditor." *Id.* at 959.

Colo. Rev. Stat. § 7-80-703 governs charging orders for LLCs.[14] It allows a court to "charge the membership interest of the member" or even to "foreclos[e]" on a member's interest. Colo. Rev. Stat. § 7-80-703.

---

[14] In arguing that "charging orders are the [only] recognized mechanism for judgment collection" against LLC interests, Aplt. Reply Br. at 9, Mackie and Trellis reference "§ 7-80-128," *id.* at 10, which does not exist. Colo. Rev. Stat. § 7-80-703 governs charging orders for interests in LLCs, and Colo. Rev. Stat. § 7-60-128 governs charging orders for non-transferable interests in partnerships.

21

ii. <u>C.R.C.P. 69(g)</u>

C.R.C.P. 69(g) (emphasis added) provides:

> The **court** . . . **may order any party** or other person over whom the court has jurisdiction, **to apply any property** other than real property, not exempt from execution, whether in the possession of such party or other person, or owed the judgment debtor, **towards satisfaction of the judgment**. Any party or person who disobeys an order made under the provisions of this Rule may be punished for contempt. Nothing in this rule shall be construed to prevent an action in the nature of a creditor's bill.

"Colorado courts 'interpret [C.R.C.P.] 69 liberally to assist judgment creditors in enforcing final money judgments.'" *Compañía de Inversiones Mercantiles S.A.*, 58 F.4th at 469 (alterations omitted) (quoting *Isis Litig., L.L.C. v. Svensk Filmindustri*, 170 P.3d 742, 746 (Colo. App. 2007)). "The Colorado Supreme Court has explained that 'it is the principle and policy of [C.R.C.P.] 69(g) to subject all property of the judgment debtor, not specifically exempt, to the payment of his debts.'" *Id.* at 470 (alterations omitted) (quoting *Hudson v. Am. Founders Life Ins. Co. of Denver*, 417 P.2d 772, 776 (Colo. 1966)).

3. **Application**

The district court did not exceed its authority under C.R.C.P. 69(g) because (a) a charging order is not an exclusive remedy under Colorado law and (b) Mackie and Trellis have sufficient possession of Trellis's Culta equity for the district court to order them to apply that equity to the judgment under C.R.C.P. 69(g).

a. *Exclusive remedy*

Mackie and Trellis argue that a "[c]harging order[]" is the exclusive remedy "for a judgment creditor seeking to execute on a debtor's membership interest in a limited liability company." Aplt. Br. at 16. We hold otherwise. Neither the Colorado legislature nor the Colorado Supreme Court has expressly settled this question. Based on the relevant available legal materials, we predict the Colorado Supreme Court would reject Mackie and Trellis's argument.

First, § 7-80-703 is silent on whether it provides an exclusive remedy for a creditor seeking to enforce a judgment against an LLC member's interest. Other Colorado charging order provisions (a) are silent on exclusivity, Colo. Rev. Stat. § 7-60-128 (non-transferable interests in a partnership); *id.* § 7-62-703 (interests in limited partnerships); (b) state they are exclusive, *id.* § 7-64-504(5) (transferable interests in a partnership); or (c) state they are not exclusive, *id.* § 7-61-123 (interests of "indebted limited partner[s]"). This varied approach to exclusivity shows the Colorado legislature could have specified that a charging order remedy is exclusive and did not do so with § 7-80-703.

Second, the Colorado Supreme Court has not decided this issue. Mackie and Trellis contend otherwise, citing *First National Bank of Denver*, Aplt. Br. at 17, but that case does not help them. *First National Bank of Denver* held that a forced sale of partnership interests to satisfy a judgment under Colo. Rev. Stat. § 7-60-128 was void because it did not comply with that provision. 652 P.2d at 618. Not only was § 7-80-703 absent from that case, but the court also did not say that § 7-60-128 was

23

an exclusive remedy.  In this circumstance, we may look for guidance from Colorado Court of Appeals cases, *see, e.g.*, *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221-22 (10th Cir. 2021), but the parties have not cited any and we could not find one.

Third, C.R.C.P. 69(g) broadly and unambiguously authorizes an order directing (1) a party to (2) "apply any property" not specifically exempt (3) "towards satisfaction of the judgment."  The judgment enforcement order did that.

Fourth, we recently emphasized that "Colorado courts interpret [C.R.C.P.] 69 liberally to assist judgment creditors in enforcing final money judgments." *Compañía de Inversiones Mercantiles S.A.*, 58 F.4th at 469 (alterations and quotations omitted); *see* Aplee. Br. at 12.  Interpreting § 7-80-703 to prevent a court from using C.R.C.P. 69(g) would contradict this court's declaration that a plaintiff is "entitled to employ supplemental proceedings" through C.R.C.P. 69(g) "in aid of execution to collect on a judgment." *Compañía de Inversiones Mercantiles S.A.*, 58 F.4th at 469 (alterations omitted) (quoting *First Nat'l Bank of Denver*, 652 P.2d at 617); *see id.* (identifying C.R.C.P. 69(g) as "one such [supplemental] procedure").[15]

---

[15] Mackie and Trellis argue that a charging order should be the exclusive remedy for levying or executing on an LLC member's interest.  Aplt. Reply Br. at 9-10.  Other states and the model Uniform Limited Liability Company Act ("ULLCA") make charging orders an exclusive remedy to protect non-judgment-debtor members in a multi-member LLC.  *See, e.g.*, ULLCA § 503, cmt.; *id.* § 503(f); *id.* § 503(f), cmt.; J. William Callison & Maureen A. Sullivan, Limited Liability Companies § 4:5 (2023 ed.).  But Colorado has not adopted the ULLCA.  *See Nelson v. Encompass PAHS Rehab. Hosp., LLC*, 522 P.3d 707, 710-11 (Colo. 2023).  Mackie and Trellis's argument is more appropriately directed to the Colorado legislature.

For these reasons, we conclude that the Colorado Supreme Court would hold that a § 7-80-703 charging order is not an exclusive remedy for an LLC judgment creditor member seeking to enforce a judgment against a judgment debtor's interest in the LLC. The district court did not abuse its discretion in granting the C.R.C.P. 69(g) judgment enforcement order in lieu of a charging order.

b. *Sufficient control*

Mackie and Trellis also argue that under C.R.C.P. 69(g), a "court cannot force a turnover" of property over which the "debtor lacks control." Aplt. Br. at 19. They assert that because Trellis cannot "freely sell" its equity, the district court lacked authority to order Mackie and Trellis to apply this property. *Id.* at 20.[16] We hold that Mackie and Trellis have sufficient "possession" of Trellis's interest in Culta for the court to reach it under C.R.C.P. 69(g).

"'[P]ossession' under [C.R.C.P.] 69(g) does not require actual possession," and "'it is the principle and policy of [C.R.C.P.] 69(g) to subject all property of the judgment debtor, not specifically exempt, to the payment of his debts.'" *Compañía de Inversiones Mercantiles S.A.*, 58 F.4th at 470 (alterations omitted) (quoting *Hudson*, 417 P.2d at 776). C.R.C.P. 69(g) "possession" requires only the ability to "exercise control" over the asset. *Id.* at 471. Although Trellis may face some limits on *how* it may sell its equity, it may still "exercise control" over it. *Id.* Mackie

---

[16] We are not convinced Mackie and Trellis's possession argument implicates the district court's authority, but we address it using the parties' characterization in their briefs.

thought he controlled Trellis's Culta equity when he tried to use it to raise around $2 million for himself.  App., Vol. II at 423, 436, 438, 514.  In its order, the district court also accounted for Trellis's control limitations:  it directed that Mackie and Trellis "use their best efforts" to sell the equity consistent with Culta's operating agreement and Maryland law.  *Id.* at 335-36.  Mackie and Trellis have pointed to no other limitations on their control of the equity.

Mackie and Trellis have sufficient control over Trellis's Culta equity for the district court to direct the sale of that asset under C.R.C.P. 69(g).

## C. *Whether the Order Violated Public Policy*

Mackie and Trellis argue that "compliance with the [judgment enforcement] order can only be accomplished by violating the CSA," Aplt. Br. at 12, and that "federal courts cannot grant relief that violates the CSA," *id.* at 9 (capitalization altered without notation).  They thus contend the district court's remedy to collect the money judgment would violate public policy and should be vacated.

Although their argument does not show Josh lacked standing, we agree with the dissent that the public policy issue deserves further consideration.[17]  The district

---

[17] Mackie and Trellis did not make this argument in opposition to Josh's C.R.C.P. 69(g) motion and are not entitled to appellate review of the public policy issue if it can be waived.  But even so, we may exercise our discretion to address it. *See Margheim v. Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017) ("[W]aiver binds only the party, not the court." (alterations and quotations omitted)); *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary.").

court's C.R.C.P. 69(g) order to sell equity in a marijuana business was "injunctive relief," *Wharf*, 210 F.3d at 1236, which is subject to equitable considerations, including public policy.[18]  The order raises public policy concerns about violation of federal drug law.

Culta's business may be legal under Maryland law, but the CSA fully applies in states that have de-criminalized marijuana.  *See Gonzales v. Raich*, 545 U.S. 1, 5, 15-33 (2005); *United States v. Oakland Cannabis Buyer's Coop.*, 532 U.S. 483, 486, 489-91 (2001); *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1257 (D. Colo. 2022).  Under the CSA, it is a crime "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).  Marijuana is a Schedule I controlled substance.  *Id.* § 812, sched. I(c)(10).  Culta cultivates, processes, and dispenses marijuana.  App., Vol. I at 21; App., Vol. II at 423.  As noted above, Trellis's Culta equity is likely the only asset that can fully satisfy the money judgment.

The judgment enforcement order contains three parts.  The first part orders Mackie and Trellis to "use their best efforts to sell a sufficient portion of [Trellis's]

---

[18] On appellate review of whether injunctive relief was appropriate, we have said repeatedly that injunctions should "not be contrary," "against," or "adverse to the public interest."  *See, e.g.*, *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006); *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019); *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012); *Utah v. Babbitt*, 137 F.3d 1193, 1200 n.7 (10th Cir. 1998).  Circuit courts have deemed an injunction "void" when it was "against public policy."  *See, e.g.*, *CSX Transp., Inc. v. City of Sebree*, 924 F.3d 276, 287 (6th Cir. 2019).

equity . . . in [Culta] to fully satisfy the [c]ourt's judgment." App., Vol. II at 335-36. The second requires them to "turn over the proceeds of such transaction(s) to [Josh] until the judgment is satisfied in full." *Id.* at 336. This language does not specifically instruct Mackie and Trellis to cultivate, process, or sell marijuana—they may only need to sell their equity and compensate Josh for his contract damages. *See Erickson v. Pfiester*, No. 1:21-cv-00009, 2023 WL 6297343, at *3 (D. Alaska 2023) (returning plaintiffs' investment in marijuana cultivation business did not cause either party to violate the CSA); *Mann*, 2016 WL 6473215, at *7 (holding a promissory note to purchase marijuana businesses was enforceable because evidence did not show payment would require defendant to possess, cultivate, or distribute cannabis). But they also may need to rely on Culta's continued CSA-infringing business operations to enable them to sell the equity.

The third part of the order says Mackie and Trellis "may not make any sale or pledge in respect of their Culta equity, and may not take any other action, that undermines the value of this equity." App., Vol. II at 336. This directive against undermining value is open to interpretation. It does not necessarily require Mackie and Trellis—who own a 30 percent share of Culta, *id.* at 347—to affirmatively cultivate, process, or sell marijuana.[19] But it may be read as instructing them to "use

---

[19] This view of the order arguably finds support from the district court's temporary restraining order ("TRO"), *compare* App., Vol. II at 336-37, *with* Dist. Ct. Doc. 212, which was designed to prevent Mackie from continuing his attempts to use Trellis's equity in Culta to fundraise for purposes other than paying the judgment, *see* Dist. Ct. Doc. 207 at 1; *see also* App., Vol. II at 493 (Josh's counsel arguing that if the TRO was allowed to expire Mackie might "find[] a way to . . . try and use a gap to dissipate the

best efforts" to maintain Culta's business value by abetting continued operations in violation of federal law. And their doing so may be necessary to comply with the order.[20]

In sum, the judgment enforcement order does not specifically order Mackie and Trellis to engage in marijuana activities that would violate the CSA, but compliance with the order may effectively require them to do so.[21] The record is not sufficiently developed to answer that question. The district court and the parties have not provided sufficiently developed analysis to answer others.

The questions, then, include whether

(1) The district court effectively ordered Mackie and Trellis to violate federal drug law. This question would benefit from further record development, which can occur only in district court.

---

assets"); *id.* at 517 (the district court stating, "The Court orders, although I think it's obvious, that the defendants may not make any sale or pledge or anything else that undermines the value of their equity from this day forward until the sale is concluded.").

[20] Testimony from the only witness at the evidentiary hearing on the C.R.C.P. 69(g) motion reinforces this reading. Josh called investment banker Brooke Hayes, who started to work with Mackie in September 2022 to raise funds for him based on Trellis's equity in Culta. He ultimately withdrew due to weakness in the cannabis market. App., Vol. II at 432-34. When Mackie approached him again in April 2023, Mr. Hayes declined for the same reason, *id.* at 435-42, even though Maryland had legalized cannabis for recreational use effective July 2023, *id.* at 454-55, which in other states had increased sales. Mr. Hayes's testimony suggested that efforts to sell Trellis's equity would depend in part on Culta's success in selling marijuana.

[21] A Colorado federal district court recently said it would decline payment or redress from any income stream that would be illegal under the CSA, *Sensoria*, 581 F. Supp. 3d at 1260-61, or from any asset that would be subject to criminal forfeiture, *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1026 (D. Colo. 2021).

(2) The order violates public policy. This question calls for further analysis of whether federal drug law is the only relevant public policy consideration.[22]

(3) The order is a proper equitable remedy. This question requires consideration of the limits on a federal court's formulation of a judgment enforcement order to facilitate recovery of a money judgment.[23]

We think these questions are better addressed in the first instance in the district court, which can then determine whether it would be "assist[ing] in any way towards carrying out the terms of an illegal contract." *Kaiser Steel*, 455 U.S. at 77.

---

[22] In other words, would the C.R.C.P. 69(g) order be contrary to public policy based only on the CSA or should other policy concerns such as Maryland marijuana law and the interest in judgment enforcement also be considered in fashioning relief? *See Kaiser Steel*, 455 U.S. at 80 (recognizing the policy "of preventing people from getting other people's property for nothing when they purport to be buying it" (quotations omitted)); *see also* Colo. Rev. Stat. § 13-22-601 ("It is the public policy of the state of Colorado that a contract is not void or voidable as against public policy if it pertains to lawful activities authorized by section 16 of article XVIII of the state constitution and article 10 of title 44.").

[23] For example, we highly doubt a district court order telling Mackie to rob a bank and turn over the proceeds to satisfy the judgment would survive appellate review. *See Sensoria*, 581 F. Supp. 3d at 1256 ("At issue is whether [the defendant] engaged in illegal conduct that hinders the Court's ability to remedy the damages [the plaintiff] suffered."). In *Kaiser Steel*, the Supreme Court noted the difference between cases in which a court is asked to order an illegal act and those where the requested relief would not directly order unlawful conduct. 455 U.S. at 79-80. The latter would leave room for balancing equitable considerations, but not when the relief ordered "command[s] unlawful conduct." *Id.* at 79; *see Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005) (examining whether "a plausible remedy exists for [the plaintiff] that would not require a court to order a legal violation").

In sum, we recognize that the judgment enforcement order would be invalid if it requires Mackie and Trellis to violate public policy.[24]  But we do not think the order is sufficiently clear nor the record sufficiently developed to answer that question.  We remand to address those matters.  Rather than being "remiss" or refusing to "acknowledge the elephant in the room," as the dissent alleges, Dissent at 6, 8, our resolution allows for more informed consideration of public policy concerns than the dissent's call for summary disposition.[25]  We therefore vacate the order and remand for further proceedings

## CONCLUSION

We affirm in appeal **No. 24-1049**.  We vacate and remand for further proceedings in appeal **No. 23-1211**.

---

[24] The dissent suggests that Josh could seek his remedy in state court, Dissent at 8 n.6, but does not explain why the same federal public policy concerns would be absent there.  *See* U.S. Const. art. VI.

[25] The dissent would summarily dismiss because the original contract involved marijuana.  We join many other courts that opt for more careful analysis consistent with our "duty . . . to decide cases and controversies properly before [us]."  *United States v. Raines*, 362 U.S. 17, 20 (1960).

*Bartch v. Barch,* Nos. 23–1211 & 24–1049

**BALDOCK,** Circuit Judge, dissenting.

The district court found Plaintiff Bartch and Defendant Barch entered into an oral contract to establish Culta, LLC (formerly Doctor's Orders Maryland or DOMD), a vertically integrated Maryland business enterprise engaged in cultivating, processing, and dispensing marijuana. *Bartch v. Barch*, No. 18–CV–3016–RBJ–MDB, Findings of Fact, Conclusions of Law, and Order of Judgment, at 1–4 (D. Colo. filed Sept. 7, 2022); s*ee generally https://www.culta.com.* As of today, the Federal Criminal Code labels marijuana an illegal Schedule I controlled substance along with drugs like heroin, ecstasy, and LSD. 21 U.S.C. § 812. This Court cannot dispute that what Culta does, namely produce and traffic marijuana, remains illegal under both the Federal Controlled Substances Act (CSA) and the Racketeer Influenced and Corrupt Organizations Act (RICO), and perhaps other federal enactments. Recognition of these simple facts should have sounded the death knell of Plaintiff Bartch's breach of contract claim by summary dismissal in the district court. Because the underlying contract between Plaintiff and Defendant Barch to establish Culta directly conflicts with a myriad of federal criminal laws, this Federal Court is bound to follow binding Supreme Court precedent and refuse to acknowledge its validity.

In short, Plaintiff's breach of contract claim arises out of an illegal contract, and the Supreme Court has recognized that "[t]he authorities from the earliest times to the present unanimously hold that *no federal court will lend its assistance in any way towards carrying out the terms of an illegal contract.*" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) (emphasis added) (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899)). This Court's

focus on whether Defendants raised an illegality defense pre-judgment or whether Fed. R. Civ. P. 60(b)(4) provides for post-judgment relief based on a claim of illegality, *see* Court's Op. at 2, 7, 11, 13, 15 n.8, is misplaced because the Supreme Court has told us that "[*w*]*henever the illegality appears, . . . the disclosure is fatal to the case*." *Coppell v Hall*, 74 U.S. 542, 558 (1868) (emphasis added). The question of illegality is "*one which the court itself* [*is*] *bound to raise* in the interest of the due administration of justice." *Oscanyan v. Arms Co.*, 103 U.S. 261, 267 (1880) (emphasis added). In other words, this Court is bound to raise the question of illegality *sua sponte* whenever it appears. 15 *Corbin on Contracts* § 79.6, at 21 (rev. ed. 2020) ("Courts should take it upon themselves to refuse to enforce [illegal] contracts because to enforce them would require judges to assist in unsavory dealings and thus taint and undermine the overall respectability of the judiciary."). Despite the Supreme Court's plain instruction, this Federal Court chooses to disregard black letter law and ignore the elephant in the room that is the *federally* illegitimate business enterprise known as Culta. That this Court, obliged to say what the law is and bound to uphold federal public policy based on such law, has chosen to "lend its assistance in any way" to the parties' business dealings—"unsavory dealings" in the eyes of federal law— squarely conflicts with Supreme Court precedent and reflects poorly upon us.

I.

Consistent with Supreme Court authority, this Court should begin its analysis by acknowledging the subject contract's indisputable illegality under federal law.[1] For

---

[1] Defense attorneys love to couch their legal arguments in terms of a federal court's power to hear a case and federal courts far too often take the bait. *See, e.g.*, *Arbaugh v. Y & H*

2

instance, the CSA makes it "unlawful for any person knowingly and intentionally . . . to manufacture, distribute, or dispense, or possess with intent . . . [to do so]," marijuana. 21 U.S.C. § 841(a)(1). This Court should acknowledge that manufacture, distribute, and dispense marijuana is precisely what Culta does. The CSA also makes it unlawful for any person to conspire or agree with another (no overt act is required) to commit any of the offenses set forth in section 841(a)(1). *Id*. § 846. This Court should acknowledge that such agreements undoubtedly are necessary to Culta's business operation. In fact, the contract between Plaintiff and Defendant Barch may very well violate section 846. Continuing on, section 856 of the CSA makes it unlawful for anyone to "knowingly open, lease, rent, use, or maintain any place" for the purpose of manufacturing or distributing marijuana. *Id*. § 856(a). This Court should acknowledge that Culta, according to its website, has multiple business locations that dispense marijuana.

Consider too RICO. RICO defines unlawful racketeering activity to include the "felonious manufacture, . . . selling, or otherwise dealing in" marijuana. 18 U.S.C.

---

*Corp.*, 546 U.S. 500 (2006). Jurisdiction, the Supreme Court has observed, "'is a word of many, too many, meanings.'" *Id.* at 510. Federal courts must be careful not to render jurisdictional rulings when faced with what is, in law, a merits defense. *Id.* at 511. In the interest of brevity, suffice it to say Defendants' belated argument that the affirmative defense of illegality bears upon the redressability requirement of Plaintiff's Article III standing and thus the district court's subject matter jurisdiction is incorrect. The Supreme Court established long ago that "anyone sued upon a contract may set up as a defense that it is a violation of the act of Congress, and, if found to be so, that fact will constitute a good defense to the action." *E. Bement & Sons v. Nat'l Harrow Co.*, 186 U.S. 70, 88 (1901). More recently, Congress has endorsed the Supreme Court's view in Fed. R. Civ. P. 8(c)(1), which lists illegality as an affirmative defense. Any claim that fails to overcome an illegality defense is certainly not redressable, but this observation has no bearing whatsoever on a claimant's ability to allege, as Plaintiff did in this case, a redressable injury necessary to establish Article III standing.

§ 1961(1)(D). The Tenth Circuit has recognized, and this Court should acknowledge, that cultivating marijuana for sale "*necessarily* would involve *some* racketeering activity" because "*cultivating marijuana for sale . . . is by definition racketeering activity*." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (first and last emphasis added). Given our own precedent, Culta is engaged in racketeering activity as proscribed by RICO. Meanwhile, the Ninth Circuit has observed that in enacting RICO "it is evident that Congress would have considered a cannabis business to be a form of *organized crime*." *Shulman v. Kaplan*, 58 F.4th 404, 411 (9th Cir. 2023) (emphasis added).

The foregoing recitation of federal law (one could delve deeper still) is quite enough to convince me that this Court should recognize Culta for exactly what it is: a criminal racketeering enterprise as defined by federal law that, to say the least, flouts both RICO and the CSA. Given the present public policy *of the United States* regarding marijuana as reflected in both the Federal Criminal Code and Circuit Court case law, enforcement of the oral contract between Plaintiff and Defendant Barch in this Court is most certainly prohibited as violative of this federal policy. *See Hanauer v. Doane*, 79 U.S. 342, 349 (1870) ("The whole doctrine of avoiding contracts for illegality . . . is founded on public policy."). Plaintiff's cause of action is based *entirely* upon an illegal contract to establish Culta, notably an enterprise in which federal law recognizes no property interest.[2] 21 U.S.C.

---

[2] The CSA subjects to forfeiture the following items involved in a CSA violation because "*no property right exist*[*s*]" in them: (1) the marijuana and its containers, (2) "raw materials, products, and equipment of any kind" used to process and deliver the marijuana, (3) proceeds or any other thing of value furnished in exchange for the marijuana, and (4) any real property used to facilitate such exchange. 21 U.S.C. § 881(a) (emphasis added).

4

§ 881(a). I simply do not understand why a federal court would lend legitimacy to any of this.[3]

II.

Despite its denials, *see* Court's Op. at 16 n.8, what this Court effectively tells us is that Defendants have waived or forfeited the defense of contract illegality. But, as I have already pointed out, *see* dissent, *supra* at 1–2, Supreme Court precedent by which this Court is bound plainly tells us otherwise: This precedent says in no uncertain terms that the defense of illegality cannot be waived or forfeited. Illegality is a defense that we are obliged to raise *sua sponte*. Let us turn to this precedent now.

The Supreme Court has observed that "a federal court['s] . . . duty to determine whether a contract violates federal law before enforcing it" is "well established." *Kaiser Steel*, 455 U.S. at 83. This duty arises because "[t]he power of the federal courts to enforce the terms of private agreements is *at all times* subject to the restrictions and limitations of

---

[3] This is not to say a federal court must strike all contracts that "touch upon" a marijuana enterprise. *See, e.g.*, *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, (10th Cir. 2019). In *Kenney*, an employee of defendant-employer sued, alleging defendant violated the Fair Labor Standards Act's overtime obligations. The defendant provided security services for marijuana enterprises in Colorado. We held defendant was not excused from complying with the FSLA because "any violations of the CSA are not relevant to whether the FSLA's protections apply to workers in the marijuana industry." 939 F.3d at 1113. The FSLA's overtime provisions focus on individual workers' wellbeing notwithstanding the underlying nature of the business in which their employer is engaged. *Id*. at 1111–12. Pointing out that illegal enterprises are not exempt from federal tax laws, we relied on the well-established rule that employers are not excused from complying with federal laws just because their business practices are federally prohibited. *Id*. at 1110–13.

the public policy of the United States as manifested in . . . federal statutes . . . ."[4]  *Id.* at 83–84 (emphasis added) (ellipses in original) (quoting *Hurd v. Hodges*, 334 U.S. 24, 34–35 (1948)).  Where enforcement of a private agreement would violate this public policy, a federal court has a duty or "*obligation . . . to refrain from such exertions of judicial power.*"  *Id.* at 84 (emphasis added) (quoting *Hurd*, 334 U.S. at 35).  Needless to say, the Court today is quite remiss in failing to fulfill the duty assigned it by the Supreme Court.

In contrast, one early example of the Supreme Court fulfilling this duty is its decision in *Coppell*, 74 U.S. at 542.  The relevant background is this:  *Coppell* was a breach of contract action in which the district court instructed the jury that if the contract was illegal, "the illegality had been waived."  *Id*. at 558.  The Supreme Court explained the instruction "was founded upon a misconception of the law."  *Id*.  "*In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but for the law itself. . . .*  [The law] will not enforce what it has forbidden and denounced."  *Id*. (emphasis added).  The Court continued:  "The proposition to the contrary strikes us as hardly worthy of serious refutation.  *Whenever the illegality appears, . . . the disclosure is fatal to the case*.  No consent of the defendant can neutralize its effect. . . .  Wherever the contamination reaches, it destroys."  *Id*. at 558–59 (emphasis added).

Another example of the Supreme Court rejecting the proposition that a defendant may waive or forfeit an illegality defense is its decision in *Oscanyan*, 103 U.S. at 261, also a breach of contract action.  *Oscanyan* addressed the issue of whether "the question of the

---

[4]  Defendants raise an illegality defense based on public policy for the first time at page 25 of their opening brief in Appeal No. 24–1049.

illegality of the contract could be considered in the case, the same not having been specially pleaded[.]" *Id*. at 263. The Court opined: "The position of the plaintiff that the illegality of the contract . . . cannot be noticed, because not affirmatively pleaded, does not strike us as having much weight." *Id*. at 266. The Court explained "*the objection to a recovery could not be obviated or waived by any system of pleading*, or even by the express stipulation of the parties. *It was one which the court itself was bound to raise in the interest of the due administration of justice.*" *Id.* at 267 (emphasis added); c*f. Kaiser Steel*, 455 U.S. at 81 n.6 ("And if it be suggested that Kaiser should not have waited so long to assert its [illegality] defense, the Court has held that rules of estoppel will not be permitted to thwart the purposes of statutes of the United States.") (internal quotations omitted)). This makes perfect sense: "In such cases the aid of the court is denied, not for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of individual parties." *Kaiser Steel*, 455 U.S. at 77–78 (quoting *Cont'l Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 262 (1909)).[5]

The law applicable to these appeals points only one direction while this Court inexplicably points the other. Given the foregoing Supreme Court authority—authority to

---

[5] Unsurprisingly, section 79.6 of *Corbin on Contracts*, entitled "A Sua Sponte Issue for the Court," expresses a view on the matter similar to the Supreme Court. The treatise tells us that "[b]ecause the public policy issue involves a consideration of the public interest, an interest much broader than the interests of the parties and one not usually considered by the parties, the court must take that protector's role." *Corbin, supra* § 79.6, at 21. Accordingly, "parties cannot remove the issue from the court's purview by not raising the issue, . . . or otherwise waiving the issue. The corollary to this position is that *the validity of a contract offensive to public policy cannot be waived.*" *Id*. (emphasis added); *see also* 5 *Williston on Contracts* § 12.5, at 1026–27 (4th ed. 2009) (defense of illegality based on public policy "cannot be evaded by the device of waiver").

which this Court does not meaningfully respond—this Court should acknowledge the elephant in the room and summarily dispose of this matter by remanding to the district court with instructions to dismiss. I agree that decisions from the Tenth Circuit appear in conflict with the Supreme Court. *See* Court's Op. at 16 n.8. When the Supreme Court has spoken as it has in *Coppell* and *Oscanyan*, however, inferior federal court authority to the contrary is emphatically not the law. This Court should place Plaintiff Bartch and Defendant Barch back in their original positions.[6] Consistent with *binding* Supreme Court precedent, I would remand these appeals to the district court with instructions to vacate its judgment and dismiss the action as based on a contract that violates the public policy *of the United States* as it exists today. This course of action would necessarily dispose of the district court's post-judgment enforcement order.[7] I respectfully dissent.

---

[6] Let us not forget we are here because Plaintiff had a prior Colorado criminal drug conviction and thought it imprudent to apply directly to Maryland for a state-issued license to cultivate, process, and dispense marijuana. To solve his problem, Plaintiff entered into an unlawful agreement with Defendant Barch to make Culta operational in such a way that Maryland authorities would remain unaware of his criminal record. Barch refused to fulfill his end of this illegal bargain by returning a portion of Culta's ownership to Plaintiff once Maryland had granted Barch a license. Since then, things have spiraled out of control because federal courts, bound to uphold the public policy of the United States, have dropped the ball. If Plaintiff is correct that Defendant Barch breached an oral contract to aid in the establishment of a marijuana enterprise and the only asset available to redress his injury is the equity interest in this enterprise held by Barch and his holding company, then absent Congressional action, *maybe* Plaintiff's breach of contract action and his preferred remedy reside in state court.

[7] The post-judgment order, *i.e.*, remedy, directs Defendants Barch and his shell company, Trellis Holdings, to (1) use their "best efforts" to sell Trellis's equity, *i.e.*, partial ownership interest, in the marijuana enterprise, (2) turn over the proceeds from any such sale to Plaintiff until the judgment is satisfied, and (3) avoid devaluing Trellis's equity in the meantime. The first two remedial measures are self-explanatory. As for the third measure,

8

one unversed in corporate finance must understand that ordering Defendants to maintain the value of Trellis's equity in Culta pending its sale is *effectively* the same thing as telling Defendants to continue cultivating, processing, and dispensing marijuana. Otherwise, the net worth of Culta and thus the value of Trellis's equity in it would necessarily decrease. Like the underlying contract, the district court's remedy of choice in this case is also very much illegal as violative of federal public policy. The post-judgment order's terms coupled with the oral contract that preceded it collectively and directly bear upon the establishment, ownership, and operation of an enterprise the sole purpose of which is to cultivate, process, and dispense marijuana. This renders both unenforceable in federal court under the present state of federal law.

9